David Jacquot
2041 Bandy Road
Priest River, ID 83856
(208) 415-0777
FAX: (208) 263-6274


## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case #  08CR1171-W |
| | ) |
| Plaintiff | ) MEMORANDUM OF POINTS AND |
| | ) AUTHORITIES SUPPORTING: |
| v. | ) |
| | ) PRE-TRIAL MOTIONS TO DISMISS, |
| DAVID C. JACQUOT, | ) SUPPRESS AND COMPEL |
| | ) PRODUCTION |
| Defendant | ) |
| | ) Judge: Hon. Thomas J. Whelan |
| | ) Courtroom: 7 |
| | ) Date: Sept 8, 2008 |
| | ) Time: 2:00 pm |

1  Now comes the Defendant, and provides the following arguments and points and authorities to

2  support the Defendant's Motion to Suppress/Dismiss/Compel Discovery.

3

4  1.  The Defendant requests that evidence in the case that is the fruit of illegal government

5       searches and actions be suppressed.  The illegal searches, and evidence derived from the

6       same, was the starting point from which the charges against the Defendant were initiated.

7       There was no audit of the LAWFIRM tax returns and no inquiries made to the individual(s)

8       responsible for keeping the LAWFIRM records.  It is not circumstantial that a criminal

9       review of LAWFIRM tax returns just happened to be initiated by the same prosecutor and the

10      same agents that were investigating LAWFIRM's clients.  Even more suspect is that fact that

11      this review only occurred after:

1

2   • The government's Temporary Restraining Order was dismissed,

3   • The Temporary Receivership was dismissed,

4   • The request for Preliminary Injunction was denied,

5   • The IRS's civil case was dismissed,

6   • The government was required to pay substantial attorney fees to the Defendants in the
7      above actions,

8   • The government's false and erroneous letter to all xelan clients failed to turn up any
9      victims, and

10   • Global settlements were entered into by the IRS upholding the deductibility of the alleged
11      fraudulent programs.

12

13   The illegal activity of the government and the illegal evidence it obtained lead to the vindictive

14   and unusual review of the LAWFIRM tax returns.  The Defendant argues that the searches were

15   illegal and the illegality is being covered-up by the prosecution's refusal to provide discovery

16   that shed light on the illegal conduct.

17

18   The remainder of this brief will describe the violations by the government that resulted in illegal

19   seizures, violations of Federal Rule of Procedure 16, violation of the Defendant's constitution

20   right to exculpatory evidence, Grand Jury violations, prosecutorial misconduct and

21   selective/vindictive prosecution.

22

23   **2.  Intentional and Bad Faith Violation of Federal Rule of Criminal Procedure 16**

24

25   Contrary to well established law, and despite three written requests and an attempt to meet face

26   to face regarding discovery, the government and AUSA Faith Devine are refusing to provide

27   what is required by law.  As shown in paragraph 38 and Exhibit 5 of the Statement of Facts, the

28   Defendant attempted to narrow the scope of this dispute by providing AUSA Faith Devine with a

29   simple chart to indicate the existence or non-existence of the disputed items and her intention to

30   produce or not produce those items that did exist.  AUSA Devine refused in writing to provide

1    such information.  Therefore the discussion and proceedings regarding this matter may be more

2    extensive and cumbersome than if she had simply replied.  Rule 16 requires the government to

3    provide (among other things):

4

5    2.1. **Documents and Objects, which include books, records, data within the**

6    **government's possession, custody or control**.  The government's "custody or control"

7    has been broadly construed by the courts.  *See* U.S. v. Santiago, 46 F.3d 885 (9th Cir.

8    1995); U.S. v. Bryan, 868 F.2d 1032 (9th Cir. 1989) (*Rule 16(a)(1)(C) includes out-of-*

9    *district documents in the possession, custody, or control of any federal agency*

10    *participating in the investigation of the defendant which prosecutor had knowledge of*

11    *and to which prosecutor had access*).  The Court has broad authority to impose sanctions

12    for Rule 16 violations, including dismissal of the case.  U.S. v. Gatto, 763 F.2d 1040,

13    1046 (9th Cir. 1985).  Specifically, Rule 16 requires that the government disclose

14    documents or objects that:

15

16    2.1.1.**The Government intends to use at trial in its case in chief**.  In regards to this

17    issue, information disclosed is solely at the discretion of government and the

18    Defendant simply requests that the Court find that **no** evidence other than already

19    disclosed by the Government prior to the filing date of this Motion be admissible at

20    trial and no testimony related to such excluded records be admissible at trial.

21

22    2.1.2.**Were obtained from or belong to the Defendant**.  The government has extensive

23    property belonging to the Defendant.  As described in paragraph 16 of the Statement

24    of Facts, in a joint agency raid, conducted pursuant to a warrant that the Defendant

25    contends was invalid due to bad faith false affidavits and/or information illegally

26    obtained via violation of the attorney client privilege, the government seized

27    virtually all electronic client records and administrative records of LAWFIRM, and

28    other written materials by LAWFIRM.  Not only was this seizure pursuant to an

29    alleged invalid warrant, these materials were taken from an attorney, over his

30    objections,  known to be working at that location for a company other than the target

1     of the raid.  None of these materials have been returned in over three (3) years and

2     none have been returned pursuant to discovery requests.

3

4     2.1.3. **Are material to preparing a defense** . The government case against the Defendant

5     appears to allege that deposits do not match gross revenue reported.  No audit of

6     LAWFIRM returns , nor any interviews of persons responsible for recordkeeping of

7     LAWFIRM occurred.  This simplistic approach does not take into account inherent

8     accounting irregularities between accrual and tax basis accounting, nor the

9     possibility of accidental or intentional errors in tax reporting documents (such as

10     1099's) from third parties.  During the years in question, LAWFIRM received the

11     vast majority of its income from xelan, Inc. and affiliated companies.  These

12     companies are no longer operating and the sole source of records of these

13     transactions is in the hands of the government, taken during the Nov 2004 raid

14     described in paragraph 16 of the Statement of Facts.  This includes electronic

15     accounting data and the metadata that accompanies such records.  To establish their

16     case the government seized and reviewed a very large number of documents and

17     electronic accounting records.  Unlike a street crime, there is little physical evidence

18     in a case such as this, much less a crime scene, and often there is not even a discrete

19     event.  The events and transactions that make up an entry on a tax return are often a

20     compilation of numerous transactions over a period of a year.  If the government

21     must rely on a paper trail and computer and accounting records to establish its case,

22     then certainly the Defendant needs access to the same to mount a defense.  There is

23     no requirement that the Defendant show that the records sought are exculpatory for

24     the purposes of Rule 16.  Another alleged false income tax return case illustrates

25     this point.  In United States v. Lloyd, 992 F.2d 348 (D.C. Cir. 1993) the government

26     charged the defendant with aiding and abetting the preparation of false income tax

27     returns. The defendant sought copies of previous tax returns filed by the clients who

28     he was accused of assisting in hiding income, arguing that the clients had misled

29     him and therefore he did not have the requisite intent to aid in the filing of false tax

30     returns. The District of Columbia Circuit found sufficient indicia of the materiality

1   of the requested records under Rule 16(a)(1)(C), **even though the defendant was**

2   **ignorant of their contents and could not show that they would in fact be**

3   **material to the defense**. The concept of helpfulness for determining materiality

4   refers to whether **documents *may* assist in preparing the defense,** not that the

5   defendant demonstrate they actually provide a defense because that showing is

6   virtually impossible without access to the records. Denying the Defendant access to

7   this evidence is unconscionable. There is no justifiable reason for the government

8   to deny access to these records and since they have done so, the case should be

9   dismissed. If the case is not dismissed, the Defendant requests that the Court allow

10  **no** evidence from such records to be admissible at trial and allow no testimony

11  related to such excluded records to be admitted at trial at trial. This blanket

12  exclusion is appropriate based on Federal Rule of Evidence 106, "Remainder of or

13  Related Writings or Recorded Statements" which provides: "*When a writing or*

14  *recorded statement or part thereof is introduced by a party, an adverse party may*

15  *require the introduction at that time of any other part or any other writing or*

16  *recorded statement which ought in fairness to be considered contemporaneously*

17  *with it."*

18

19  2.1.4. **The Defendants Statements to Government Agents**. The Defendant has made

20      countless oral and written statements to IRS agents, including IRS Criminal

21      Investigation Agents on more than one occasion. No such statements or reports

22      containing such statements have been disclosed.

23

24      2.1.4.1.    In regards to oral statements that **do not** contain exculpatory information,

25          disclosure is required of those statements and of documents that contain

26          statements or summaries of statements that the government **intends to**

27          introduce at trial. Reports summarizing interviews and memoranda containing

28          the substance of oral statements are also within the scope of Fed. R. Crim. P.

29          16. See U.S. v. Johnson, 525 F.2d 999 (2d Cir.1975); *see also* U.S. v. Walk,

30          533 F.2d 417, 418 (9th Cir. 1975). Additionally, reports and documents

1    containing Defendant's statement that that the government **does not intend** to
2    introduce at trial must also be disclosed in the 9th Circuit.  U.S. v. Bailleaux,
3    685 F.2d 1105, 1113-14 (9th Cir. 1982).  AUSA Faith Devine's assertions that
4    all required disclosures have been in accordance with "*local practice and*
5    *federal criminal law*" are false.  The government has statements of the
6    Defendant and pursuant to law these should be disclosed.  The Defendant
7    requests that the case be dismissed for this breach of duty by the government
8    and prosecutor Faith Devine's false statement that all disclosures required by
9    "*local practice and federal criminal law*" have been made.  If dismissal is not
10   granted, since the government has elected to release no statements, the
11   Defendant requests that the Court find that **no** oral statements of the Defendant
12   or any records that contain statements of the Defendant be admissible at trial
13   and **no** testimony: (1) related to such statements,(2) by agents that collected
14   such statements, and (3) related to records that contain such statements, be
15   admissible at trial.
16
17   2.1.4.2.    In regards to oral statements that contain exculpatory information, all such
18           statements and all documents and recordings that contain such statements or
19           references to such statements are required to be disclosed and failure to
20           disclose is violation of the Defendant's constitutional rights that warrants
21           dismissal.   (See paragraph 3, below).
22
23   2.1.4.3.    In regards to written statements, the Federal Rules of Criminal Procedure
24           provide that all written statements by the Defendant must be provided.
25           Additionally, the government must make available to the Defendant "the
26           portion of any written record which contains the substance of any relevant oral
27           statements of the defendant made in response to questioning by one known at
28           the time to be a government agent."  Rough notes of agent interviews are
29           discoverable and must be preserved. U.S. v. Harris, 543 F.2d 1247, 1251-53
30           (9th Cir. 1976).  The government has rough notes and written reports of

1    statements made by the Defendant.   AUSA Devine is well aware of the
2    statements the Defendant made to IRS criminal investigators and others.  Even
3    if she had "convenient" memory loss, she has a duty to exercise due diligence
4    to ascertain whether any statements are contained in the files of the agency that
5    conducted the investigation. U.S. v. Jensen, 608 F.2d 1349, 1357 (10th Cir.
6    1979).  Just as a "trial court should strike the testimony of an agent who has
7    destroyed his rough notes," Harris, 543 F.2d at 125, the Defendant urges that
8    this Court should dismiss this action for the prosecutor's bad faith deliberate
9    exclusion of discoverable evidence.

10

11   2.1.5.**The Defendants Prior Record**.  As the government has not produced any such
12   prior records to the Defense, the Defendant simply requests that the Court find that
13   **no** such records be admissible at trial no testimony related to such records be
14   admissible at trial.

15

16   2.1.6.**Scientific Tests**.  Federal Rule of Criminal Procedure 16(a)(1)(D) allows discovery,
17   upon request of counsel, of results or reports of any scientific tests or experiments
18   and results or reports of physical or mental examinations of the Defendant within
19   the custody or control of the government which are either: (1) material to the
20   defense; or (2) to be used as evidence in the government's case-in-chief.  The
21   defense is entitled to samples for independent testing, U.S. v. Noel, 708 F. Supp.
22   177 (W.D. Tenn. 1989) and is entitled to discovery of the underlying data used in
23   government tests to aid in cross-examination and independent testing. U.S. v. Yee,
24   129 F.R.D. 629, 635-36 (N.D. Ohio 1990). Based on AUSA Faith Devine's written
25   statement on 14 August 2008 that "expert witness summaries will be provided at a
26   reasonable time prior to a firm trial date," it appears that there may be scientific tests
27   that are not being disclosed. Pursuant to the letter described in paragraph 38 of the
28   Statement of Facts, the lack of a response by AUSA Devine is deemed a denial of
29   the existence of such tests.  If such reports exist and were intentionally not disclosed
30   by AUSA Devine, the Defendant asks the Court to dismiss these charges.

1      Additionally, as the government has not produced any records of scientific tests, the

2      Defendant requests that the Court find that **no** such tests be admissible at trial and

3      that no testimony related to such tests be admissible at trial.

4

5      2.1.7.**Expert Witnesses**.   The prosecutor must give notice to defense counsel of its

6      intention to use results of scientific tests or expert witnesses with enough time for

7      counsel to obtain an expert to assist him in attacking the findings of the

8      government's expert.  The advisory committee notes contemplate that requests and

9      disclosures will be made in a "timely" fashion. U.S. v. VonWillie, 59 F.3d 922, n.4

10     (9th Cir. 1995). If the prosecutor fails to give adequate notice to the defense, the

11     Court should either exclude the testimony of the government's expert or to grant a

12     continuance which will allow the defense to consult with and possibly retain an

13     expert. *See* People of Territory of Guam v. Cruz, 70 F.3d 1090, 1092 (9th Cir.

14     1995); U.S. v. Barrett, 703 F.2d 1076, 1081 (9th Cir. 1983).  AUSA Faith Devine's

15     written statement on 14 August 2008 that "expert witness summaries will be

16     provided at a reasonable time prior to a firm trial date" clearly indicates that an

17     expert witness is intended to be used.  The Defendant argues that consistent with her

18     statement, AUSA Devine may be able to provide the expert witness summaries at a

19     later date, but that she had a discovery obligation to inform the Defendant of the

20     identity of such witness to allow the Defendant an opportunity to prepare.  The

21     Defendant contends that the reason for AUSA Devine to withhold such information

22     is another bad faith attempt to preclude the Defendant from being able to adequately

23     prepare his defense and as such is a basis for dismissal of the charges.  If a dismissal

24     is not granted, the Defendant requests that the Court find that **no** expert testimony is

25     admissible at trial.

26

27

---

1  3.  **Intentional and Bad Faith Violation of the Defendant's Constitutional Rights**
2      **Regarding Exculpatory Evidence.**
3
4  The government has a Constitutional duty to inform the defense of material exculpatory evidence
5  impacting either guilt or punishment.  Although the Defendant contends that the government's
6  failure to provide exculpatory evidence is nothing more than another link in a long chain of bad
7  faith activities, it does not matter if the violation is innocent or in bad faith.  The Supreme Court
8  has held that "suppression by the prosecution of evidence favorable to an accused upon request
9  violates due process where the evidence is material either to guilt or to punishment, **irrespective**
10 **of the good faith or bad faith of the prosecution,**" Brady v. Maryland, 373 U.S. 83, 87 (1963).
11 The Defendant contends that the following exculpatory evidence exists and was not disclosed:
12
13 3.1. **Documents and objects.** *Brady* is not merely a rule of discovery, but one of fairness.
14       "The government cannot with its right hand say it has nothing while its left hand holds
15       what is of value," United States v. Wood, 57 F.3d 733, 737 (9th Cir. 1995) as such an
16       action denies due process and fundamental fairness.  As described in paragraph 2.1.3,
17       above, the accounting records are crucial to the development of a defense and the failure
18       to provide them is not only a Rule 16 violation but is also a violation of the duty to
19       provide exculpatory evidence.  AUSA Devine's refusal to disclose the accounting
20       records of xelan, while the government itself has used the same in the development of its
21       case is a bad faith due process violation and should be sanctioned with dismissal of the
22       case.  If the case is not dismissed, the Defendant requests that the Court allow **no**
23       evidence from such records to admissible at trial and allow no testimony related to such
24       excluded records to be admitted at trial.  This blanket exclusion is appropriate based on
25       Federal Rule of Evidence 106,"Remainder of or Related Writings or Recorded
26       Statements" which provides: "*When a writing or recorded statement or part thereof is*
27       *introduced by a party, an adverse party may require the introduction at that time of any*
28       *other part or any other writing or recorded statement which ought in fairness to be*
29       *considered contemporaneously with it.*"
30

1    3.2. **Prior records of government witnesses**.  Based on the fact that the Federal Public

2         Defender's office was conflicted from representing the Defendant as described in

3         paragraph 31 of the Statement of Facts, it appears likely that a witness or informant with

4         criminal issues exists.  AUSA Faith Devine is clearly aware of such information as she

5         stated to the Magistrate Adler that such conflict definitely exists.  Such information must

6         be provided to the defense.   U.S. v. Strifler, 851 F.2d 1197, 1201 (9th Cir. 1988).

7         Failure to disclose any prior records of such a witness is a due process violation that

8         should result in dismissal of the indictment.  In the event the case is not dismissed, the

9         Defendant requests the Court to allow **no** testimony by any witness that has a prior

10        conviction to be admitted at trial.

11

12   3.3. **Impeachment Evidence of Government Witnesses**.  Any evidence which would affect

13        the credibility of a government witness should be construed as Brady material. This

14        would include any information which shows bias of the witness, motive for the witness

15        to lie or exaggerate testimony, and any credibility concerns of a government witness (i.e.

16        prior bad acts of dishonesty, felony convictions).  The government may not withhold

17        impeachment evidence of government witnesses. Singh v. Prunty, 142 F.3d 1157 (9th

18        Cir. 1998) (prosecutor failed to disclose an agreement   to provide benefits to witness in

19        exchange for testimony); See U.S. v. Bernal-Obeso, 989 F.2d 331, 336 (9th Cir. 1993)

20        ("a material lie by a critical informant-witness about his prior record would be

21        exculpatory and thus discoverable Brady information"); U.S. v. Brumel-Alvarez, 991

22        F.2d 1452, 1461 (9th Cir. 1992) (failure to turn over evidence that government snitch

23        was running the investigation and manipulating the DEA constitutes Brady violation).

24        This is even more vital if the witness is an informant.  The Ninth Circuit, noting that

25        informants are cut from "untrustworthy cloth" and that the use of informants is a "dirty

26        business," placed an affirmative duty on "prosecutors and investigators to take all

27        reasonable measures to safeguard the system against treachery." See Bernal-Obeso, 989

28        F.2d at 333-34 (9th Cir. 1993).  Failure to disclose impeachment evidence of a witness is

29        a due process violation that should result in dismissal of the indictment.  In the event the

1   case is not dismissed, the Defendant requests the Court to allow **no** testimony by any

2   witness with impeachment information to be admitted at trial.

3.4. **Witness Statements Favorable to the Defendant.** The Defendant believes that
government agents and possibly prosecutors have interviewed witnesses that made
favorable statements regarding the Defendant and his activities. Failure of the
government to provide such statements is a due process violation. (Witness statements
favorable to the defendant are Brady material, <u>Jackson v. Wainwright</u>, 390 F.2d 288 (5th
Cir. 1968)). Failure to disclose any witness statements favorable to the Defendant is a
due process violation that should result in dismissal of the indictment.

3.5. **Affidavits for Search Warrants**. Even though no request is required for the production
of exculpatory information, (see <u>U.S. v. Bagley</u> 473 U.S. 667, 682 (1985)), the
Defendant specifically requested on two occasions and was denied copies of the
affidavits for search warrants. The Defendant believes that such affidavits exist based
on the 4 November 2004 search in which **his property was taken and never returned**.

3.5.1. <u>Brady Violation</u>. Even though he was denied a copy of the search warrant
affidavits, the Defendant contends the affidavits in support of the search warrant
contained erroneous and false information. These warrants were obtained and
executed in coordination with the TRO/receivership/civil complaint proceeding and
the supporting declarations submitted to Judge Whelan by AUSA Devine described
in paragraph 15 of the Statement of Facts. It is likely that the search affidavits in
the same case, at the same point in time, involving the same agents, and the same
prosecutor(s) contained similar information. Since the information in these
affidavits was likely similar, it follows that it is likely just as false as the information
provided in the TRO receivership declarations. False and erroneous search
affidavits are exculpatory and should have been disclosed. The Defendant also
alleges that the investigation that lead to the search was initiated by information

1    obtained that was known to violate the attorney client privilege (See paragraph 3.6

2    below.) Therefore the Defendant contends that:

3

4    ■  Since a copy of such affidavits was requested and denied, all inferences should

5       be in favor of the Defendant and that failure to provide search warrant affidavits

6       that contain false and erroneous information is a due process violation that

7       warrants dismissal and or suppression of any evidence obtained or derived there

8       from.

9

10   ■  Since a copy of such affidavits was requested and denied, all inferences should be

11      in favor of the Defendant and all evidence obtained by the government after

12      receiving information from Mr. Suverkrubbe should be suppressed.

13

14   3.5.2. Lack of Probable Cause.  A search or seizure that is unsupported by probable cause

15      is unlawful.  Carroll v. U.S. 267 U.S. 132, 155-56 (1925).  The Defendant contends

16      that the affidavits did **not** show probable cause because they are likely similar to the

17      declarations for the TRO/receivership and these declarations were insufficient to

18      support the TRO/receivership.   The standard of proof for a TRO is described as

19      "reasonable grounds." United States v. Stewart, 872 F.2d 957, 962 (10th Cir. 1989).

20      The Defendant argues that if the information in the declarations was not sufficient

21      for "reasonable grounds," that it is not sufficient to show "probable cause" and

22      therefore the seizure is invalid.  Evidence that is unlawfully seized is not admissible

23      to prove a Defendant's guilt.  Weeks v. U.S., 232 U.S. 383,398 (1914) Mapp v.

24      Ohio, 367 U.S. 643, 654 (1961). This includes the "fruit" of such illegal conduct.

25      Silverthorne Lumber Co. v. United States, 251 U.S. 385 (1920); Wong Sun v. U.S.,

26      371 U.S. 471, 487-88 (1963). Evidence should be suppressed when a magistrate

27      issues a warrant on deliberately or a recklessly false affidavit.  Franks v. Delaware,

28      438 U.S. 154, 155-56, 171-72 (1978); or an affidavit that is so "lacking in probable

29      cause as to render official belief in its existence entirely unreasonable." Leon v.

30      U.S., 468 U.S. 923 It is clear from the record in the TRO/receivership case overall,

1    but particularly in regards to the Defendant that, the declaration in the TRO was

2    deliberately false or recklessly false (failed to disclose that a vast number of the

3    alleged illegal payments in the amount of many millions of dollars were paid to the

4    IRS for quarterly client tax obligations.) Additionally, it could be argued that the

5    declaration only resulted in a finding of "sworn uncertainty" on behalf of the IRS

6    experts, and therefore it was unreasonable to believe that it showed  probable cause.

7    All evidence seized pursuant to the search warrant and all evidence derived from the

8    evidence seizure should be suppressed.

9

10    3.5.3. Beyond the Scope of the Warrant.  Evidence seized beyond the scope of the warrant

11    should be suppressed.  U.S. v Juichang Chen 979 F.2d 714, 717-19 (9th Cir. 1992).

12    Without being provided a copy of the warrant and supporting affidavit, it is

13    impossible to tell if the scope of the warrant was exceeded, however, the Defendant

14    believes that it was unlikely that the warrant provided that client records and

15    administrative records of LAWFIRM was within the scope of the warrant.  It is also

16    unlikely that the warrant covered accounting records of xelan regarding payments to

17    counsel for legal services rendered.  Accordingly, aall evidence seized pursuant to

18    the search warrant and all evidence derived from the evidence seizure should be

19    suppressed

20

21    3.6. **Information Obtained in Violation of the Attorney Client Privilege**.  The Defendant

22    alleges that attorney Michael Suverkrubbe is the source of the IRS initial interest in this

23    case.  See paragraph 27 of the Statement of Facts.  The Defendant alleges that Mr.

24    Suverkrubbe, in violation of the attorney client privilege, was providing information to

25    his friends at IRS CID about xelan being a "ponzi scheme" (as alleged in the TRO) and

26    all kinds of other allegations that were untrue.  These allegations caused the CID agents

27    and AUSA Devine to invest a large amount of time, produce false and erroneous

28    declarations in the TRO/Receivership/ Civil Case that were submitted to this Court, and

29    waste years and countless taxpayer dollars on a frivolous investigation.   Any

30    information that was provided to the IRS agents by Mr. Suverkrubbe in violation of the

1  attorney client privilege is Brady material and failure to disclose the same is grounds for

2  dismissal.

3

4  4.  **Intentional and Bad Faith Violations of the Grand Jury Process** .

5

6  The Fifth Amendment guarantees the right to indictment in federal criminal proceedings by an

7  unbiased jury. See Costello v. U.S., 350 U.S. 359, 362 (1956). The remedy for violations of the

8  Defendant's due process rights in regards to Grand Jury violations is dismissal of the indictment.

9  See Bank of Nova Scotia v. U.S., 487 U.S. 250 (1988).   The federal courts have found various

10  kinds of witness examinations before the grand jury to be improper because they bias the grand

11  jury. For example, a prosecutor may not ask a series of questions designed solely to destroy the

12  character of the accused in the eyes of the grand jury; see U.S. v. Samango, 607 F.2d 877, 883

13  n.10 (9th Cir. 1979). In this case, it appears from the face of the indictment that the AUSA Faith

14  Devine presented evidence to the Grand Jury about the Defendant's involvement with xelan.

15  Based on the track record of presentation of erroneous and false xelan related evidence by AUSA

16  Devine in the TRO / Receivership before Judge Whelan, the Defendant contends that xelan

17  information was improperly introduced before the Grand Jury to destroy the character of the

18  Defendant and that the case should be dismissed. Additionally, based on the massive negative

19  publicity surrounding the xelan matters in the San Diego area, presentation of the Defendant's

20  involvement has the capacity to destroy the Defendant's character and improperly bias the Grand

21  Jury and the indictment should be dismissed. In the event the case is not dismissed, the

22  Defendant requests that the Court order that the transcripts of the Grand Jury proceedings be

23  produced and provided to the Defendant to prove that no illegal tainting of the jury occurred.

24  Rule 6(e)(2) generally precludes discovery of grand jury transcripts, but two exceptions listed in

25  Rule 6(e)(3)(C) provide the defense access to them: (i) when "so directed by a court" in regard to

26  a judicial proceeding, or (ii) when "permitted by a court" because of a motion to dismiss the

27  indictment for misconduct before the grand jury. All that is needed is a colorable claim that

28  grand jury misconduct occurred to allow transcripts to be produced under Rule6(e)(3). See

29  Pittsburg Plate Glass Company v. U.S., 360 U.S. 395, 400 (1959). Here there is more than

30  enough evidence for a "colorable claim." There is history of presentation of improper and false

1   information in judicial proceedings by AUSA Devine and there is specific reference to the

2   Defendant's involvement with xelan in the indictment.  Even if this is not sufficient evidence

3   for a "colorable claim," the District Courts retains discretion to order disclosure of grand jury

4   transcripts for reasons beyond those listed under Rule 6(e)(3).  Craig v. U.S., 131 F.3d 99, 102

5   (2d Cir. 1997); In Re Hastings, 735 F.2d 1261, 1268 (11th Cir. 1984); In Re Biaggi, 478 F.2d

6   489, 494 (2d Cir. 1973).  Based on the long and sordid history of government action in this case,

7   the Court should dismiss the Indictment or at a minimum order production of the transcripts.

8

9   5.  **Prosecutorial Misconduct**.

10

11  The prosecutor's duty is to seek justice.  Berger v. U.S., 295 U.S. 78, 88 (1935).  When a

12  prosecutor's misconduct has violated the Defendant's due process rights, a dismissal or reversal

13  is appropriate.  Beardslee v. Woolford, 358 F.3d 560, 573 (9th Cir. 2004).  The long pattern of

14  governmental misconduct and particularly the discovery and Brady violations by AUSA Devine

15  have violated the Defendant's due process rights and the Indictment should be dismissed.

16

17  6.  **Selective/Vindictive Prosecution**.

18

19  The government has a broad discretion to investigate and bring charges, but it is **not unlimited**.

20  The Courts should protect individuals against prosecutorial decisions that are made in bad faith.

21  See U.S. v. Leonti, 326 F.3d 1111 (9th Cir. 2003).  Vindictive behavior of a prosecutor is grounds

22  for dismissal and the facts and circumstances of a case can give rise to a rebuttable assumption of

23  vindictiveness.  U.S. v. Goodwin, 457 U.S. 368, 373 (1982).  Vindictive behavior includes take

24  acts to penalize a defendant's valid exercise of statutory or constitutional rights.  U.S. v Stokes,

25  124 F.3d 39, 45 (1st Cir 1997); U.S. v. Lopez, 474 F.3d 1208, 1211 (9th Cir 2007). Additionally,

26  upon a showing of disparate treatment and improper motives, a case can be dismissed for

27  selective prosecution.  The case history shows a long-term contentious battle between the

28  Defendant's clients and the government.  Only after embarrassing defeats did the government

29  attack the Defendant.  These defeats included:

30

1   • The government's Temporary Restraining Order was dismissed,

2   • The Temporary Receivership was dismissed,

3   • The request for Preliminary Injunction was denied,

4   • The IRS's civil case was dismissed,

5   • The government was required to pay substantial attorney fees to the Defendants in the

6      above actions,

7   • The government's false and erroneous letter to all xelan clients failed to turn up any

8      victims, and

9   • Global settlements were entered into by the IRS upholding the deductibility of the alleged

10     fraudulent programs.

11

12  Further the government never audited the returns of LAWFIRM nor interviewed the

13  individual(s) responsible for record keeping.  The government seems to have simply concluded

14  that a crime has occurred because bank deposits do not match revenue on the returns.  The

15  Defendant argues that this attack is vindictive based on his exercise of statutory and

16  constitutional rights on behalf of clients in legitimate disputes over legitimate tax law issues

17  (issues that the government was never able to prove were improper).  Further, it is selective

18  prosecution as many other individuals in similar situations are not being prosecuted.  It is

19  unlikely that any substantial number of prosecutions have occurred with no review of the returns

20  or interviews of the individuals involved occurred.  If it were not for the long battle with xelan,

21  the government would not have initiated a prosecution without audit or review of the returns.

22  The tax code provides many methods of dealing with alleged errors on tax returns, with

23  prosecution occurring only on the most egregious of cases.  This is not one of those cases.  For

24  example, if the facts are as the government alleges, under the tax code, the numbers for 2002 **do**

25  **not even qualify** as a substantial understatement of income that would warrant an extension of

26  the civil audit statute of limitation from 3 years to 6 years, let alone constitute a criminal

27  violation.  The case is ripe with circumstances of vindictive behavior.  Beyond those previously

28  described in the Statement of Facts, publicity is a telling factor in the government's motivations.

29  When the TRO/Receivership and raid occurred, the government launched a massive publicity

30  and press release campaign and the story was carried in local and national newspapers,

1   televisions shows, and internet sites. This publicity even included a prepared statement by the

2   IRS Commissioner Mark W. Everson who said:

3

4         *"This is one of the biggest cases we have seen in years..."*

5

6   Obviously the agents involved and AUSA Faith Devine must have really "sold" the xelan case to

7   their superiors as a huge deal if the IRS Commissioner himself had a prepared statement waiting

8   to be released in conjunction with the raid. After it was disclosed that the declaration was full of

9   lies and the case was thrown out by Judge Burns, there was no publicity, apology or retraction of

10  the previous allegations. There was no statement from IRS Commissioner Everson that this was

11  one of the ***"biggest cases of false allegations and injustice we have seen in years"*** and an offer

12  of his apologies for **misusing the power of this Court and abuse of citizens**. Rather there was

13  retaliation by individuals that had been thoroughly embarrassed and wanted a "conviction" to

14  salvage the mess and possibly their careers.

15

16  To further retaliate and damage the Defendant, on April 15, 2008, which just "happens" to be the

17  date each year when the media is most a tune to tax issues, AUSA Devine secures the indictment

18  in this case. Coordinated with this indictment is a press release that is issued on the same day

19  that "David Jacquot, a tax attorney" is indicted for "filing false tax returns."

20

21  These press releases and lack of retractions are simply more evidence of bad faith.

22

23  7.  **Compel Discovery .**

24

25        7.1. In the event that the Motions to Dismiss and the Motions to Suppress described herein

26              are not granted, the Defendant moves this Court to compel the Government to provide

27              the discovery described below. Just as the Court has the authority to sanction the

28              government or dismiss the case for failing to provide discovery as described in

29              paragraph 2 and 3 above, the Court also has broad authority to order production of

30              discovery. Rule 16(d)(2) states:

1
2          *"...the court may order [the violating party] to permit discovery or inspection..."*
3
4      The Defendant has requested the government disclose any evidence favorable to the
5      defendant as discussed in the accompanying Statement of Facts.  The government's bad
6      faith refusal to provide all discovery material required by <u>Brady</u> and the Defendant's
7      request for dismissal or suppression is discussed in Paragraph 3 above.  However, a
8      motion to compel production of <u>Brady</u> material is nonetheless required in order to
9      preserve any issues on the record.  <u>Lindsey v. King</u>, 769 F.2d 1034, 1041 (5 Cir. 1985)
10     ("reversal for suppression of evidence by the government is most likely where the request
11     for it was specific.")
12
13     The Court has authority to order <u>Brady</u> material disclosed prior to trial.  U.S. v. Starusko,
14     729 F.2d 256 (3rd Cir. 1984).  In <u>U.S. v. Pollack</u>, 534 F.2d 964 (D.C. Cir. 1976), the
15     Court held that, "Disclosure by the government must be made at such a time as to allow
16     the defense to use the favorable material effectively in the preparation and presentation of
17     its case, even if satisfaction of this criterion requires pre-trial disclosure." Id. at 973.
18     Pre-trial disclosure of favorable material is required in this case.
19
20     A long lapse of time between the events alleged and the trial are grounds for ordering
21     pre-trial disclosure.  See <u>U.S. v. Kosovsky</u>, 513 F.Supp. 1 (D.C. Okl. 1981).  In
22     <u>Kosovsky</u>, more than five years had elapsed since the events at issue, and on that basis
23     the Court ordered the government to produce favorable material pre-trial.  See id.  The
24     events at issue in this case are alleged to have occurred more than five years ago.  After
25     the passage of so much time, pre-trial disclosure is necessary to allow the defense to
26     prepare for trial.
27
28     The government has no valid grounds for opposing pre-trial disclosure.  In the absence of
29     a strong showing by the government why pre-trial disclosure should not be had, pre-trial
30     disclosure is preferable to disclosure during trial.  See <u>U.S. v. Penix</u>, 516 F.Supp. 248

1    (D.C. Okl. 1981). Specific, corroborated evidence of threats to the safety of witnesses is

2    a valid ground for opposing pre-trial disclosure. See <u>U.S. v. Higgs</u>, 713 F.2d 39 (3rd Cir.

3    1983), cert. denied, 464 U.S. 1048 (District Court abused discretion by ordering pre-trial

4    disclosure of names of witness offered immunity or leniency). No allegations of threats

5    by the Defendant have been made in this case. The government cannot show any

6    potential harm in this case from pre-trial disclosure. Because so much time has passed

7    since the events at issue, and the government likely possesses significant favorable

8    material the defense requires to effectively prepare its case, and there is no risk to the

9    government from early disclosure, this Court should exercise its authority to order the

10   government to produce the Brady material requested by the Defendant prior to trial.

11

12   Therefore the Defendant requests the Court to order the Government to produce the following:

13

14   7.2. The following definitions apply to production of discovery:

15

16   7.2.1."Statement." Statement shall mean all forms of verbal and non-verbal communication, to

17   include but not limited to, unrecorded oral communications and actions and all forms of

18   recorded communications, to include but not limited to audio recordings, pictures, video,

19   digital recordings, and drawings. The term Statement can also include Documents

20   (defined below).

21

22   7.2.2."Document." Document shall mean all forms of temporary or permanently recorded

23   information on both tangible and intangible mediums. Document shall include all forms of

24   written information, to include but not limited to, handwritten, typed and printed

25   documents (hereinafter "Written"). Document shall also include all forms of electronic

26   stored information (ESI), to include but not limited to, computer records, email, voicemail,

27   metadata, text messages, and deleted data and data fragments. If information is in more

28   than one format (for example hand written and typed) then the term Document means

29   each and every format and each and every format should be produced. In the event that

30   information is in both Written and ESI form, then Document means both Written and ESI,

31   and both should be produced.

1
2      7.2.3. "Electronic surveillance."  Electronic surveillance shall mean all forms of listening,
3              recording, and viewing of any Statement, Document, action or inaction through either
4              covert or non-covert means and includes but is not limited to wiretaps, recorded phone
5              conversations, cellular phone eavesdropping, electronic mail intercepts, and all other
6              forms of monitoring of communications.
7
8    7.3. Defendant requests that Government disclose to the Defendant and either provide copies to the
9              Defendant or allow the Defendant to inspect, copy or photograph the below described items.  If
10             no such items exist, a statement to that effect should be provided.
11
12     7.3.1. All documents and other tangible objects containing information about the investigation
13              and charges of the Defendant in the possession, control or custody of the government
14              which were obtained from or belonged to David Jacquot , which were obtained from or
15              belonged to David Jacquot, JD, LLM (Tax), PA (hereinafter "LAWFIRM"), that could be
16              considered material to the preparation of Defendant's defense, or intended for use by the
17              Government at any evidentiary hearing or the trial of this case.  This should include, but is
18              not limited to:  All actual Forms 1099 issued to LAWFIRM for years 2000, 2001, 2002, 2003,
19              2004; All payments by all xelan related companies to LAWFIRM during 2000, 2001, 2002,
20              2003, 2004, including: electronic accounting programs and databases and all metadata
21              related to the same, full check ledgers; audited and unaudited financial statements with
22              supporting ledgers and work papers; All actual Forms 1099 issued to Cove Trading by all
23              xelan related companies for 2000, 2001, 2002; Bank statements and cancelled checks of
24              the Attorney Trust Account of David Jacquot, JD, LLM (Tax), PA for 2001, 2002, 2003, 2004;
25              and all other xelan, LAWFIRM or Defendant financial information.
26
27     7.3.2. All material within the purview of Brady v. Maryland, 373, U.S. 83 (1963) and Giglio v.
28              United States, 405, U.S. 150 (1972).  Specifically, any material or information which tends
29              to negate the guilt of the Defendant as to the offense(s) charged and any material or
30              information within the government's possession or control which would tend to reduce

1          the Defendant's punishment for such offense(s).  This should include, but is not limited to

2          the items describe herein in paragraph 3 above.

3

4      7.3.3.All Statements of Defendant, whether before or after indictment made to employees or

5          agents of the Government (including informants), which are relevant to investigation of

6          the Defendant.  This includes all notes and Documents made that contain or refer to the

7          Statements of the Defendant.  This shall include but is not limited to Statements to:  John

8          Weeks and Robert Scheck.

9

10     7.3.4.A written disclosure of the existence or non-existence of any evidence obtained as the

11          result of Electronic Surveillance and if so, copies of all surveillance reports related to the

12          investigation of the Defendant.  This disclosure should describe the full extent of any

13          Electronic Surveillance, eavesdropping, or tape recording in which Defendant had any

14          interest and of any conversations where the Defendant was a participant in or was a

15          recipient witness thereof.  This request includes any affidavits and applications related

16          thereto as well as copies of the recordings, transcriptions, summaries and logs thereof.

17

18     7.3.5.A written disclosure as to whether there have been any tape recordings of any Statements,

19          admissions, confessions, or conversations involving Defendant along with a copy of said

20          tape recordings and a copy of any transcriptions thereof.

21

22     7.3.6.A written disclosure as to the existence or non-existence of anticipated testimony by

23          government informer(s), and if so, the identity of any informants who allegedly have

24          information about the investigation of the Defendant, including: (a) The name of the

25          informant; (b) The present whereabouts of the informant, and (c) any Statements and

26          Documents related to such informant's testimony.

27

28     7.3.7.Order depositions of Michael Suverkrubbe and IRS Agent Shrek to determine the

29          information provided by Michael Suverkrubbe to the government.

30

1     7.3.8.Provide the case files of agents involved in the investigation to determine the information

2          provided by Michael Suverkrubbe to the government.

3

4     7.3.9.Disclose the full and complete extent of any dealings with, or promises of any

5          inducements, made by employees/agents of the Government to any person including

6          prospective Government witnesses or defendants in any other case, for information

7          related to the investigation of and charges against the Defendant, including but not limited

8          to Michael Suverkrubbe and Wendy Hickson.

9

10    7.3.10.  The name(s), work address, work phone number(s) of all government employees, agents

11        and informants involved in the investigation of the Defendant, to include, but not limited

12        to employees and agents of: Internal Revenue Service, Postal Inspector, The Department

13        of Homeland Security, Immigration and Naturalization, and Immigration and Customs

14        Enforcement.

15

16    7.3.11.  The conviction records (if any) of all such witnesses the Government intends to call at

17        any evidentiary hearing or at the time of trial.  If no convictions exist, a statement that

18        verifies the same.

19

20    7.3.12.  A transcript of all Grand Jury testimony and copies of all Grand Jury evidence related to

21        the investigation of the Defendant.

22

23    7.3.13.  Copies of any and all search warrants (including affidavits in support thereof and

24        inventories listing articles seized when executing said warrant) used by the Government to

25        obtain any information or evidence in the investigation of the Defendant.

26

27    7.3.14.  All inventory(ies) listing all items seized without warrant and  the location of the seizure

28        of all items seized in the Government's investigation of the Defendant.  This shall include

29        but is not limited to: items seized from 401 West A Street, #2210, San Diego, California.

30

1   7.3.15. The prior criminal record of felonies and misdemeanors of Defendant, and a statement

2     as to whether or not the Government intends to use the same.

3

4   7.3.16. The results of physical or mental examinations and drug or substance abuse history of

5     employees/agents of the Government and/or informants, witnesses, indicted or

6     unindicted co-conspirators, or cooperating defendants.

7

8   7.3.17. The results of all scientific tests or experiments on any Document, or tangible object

9     made in connection with the investigation of the Defendant.

10

11   7.3.18. The name, business address, phone number and a written resume of the qualifications

12     of any expert witness which the United States Attorney intends to call in the case in chief

13     together with a statement of the substance of such expert's expected testimony.

14

15   7.3.19. All Statements and Documents that were obtained in violation of the attorney-client

16     privilege during the investigation of the Defendant and all Statements and Documents that

17     were obtained in violation of any other privilege recognized by law.

18

19   7.3.20. All Statements and Documents that were obtained in violation of any law or

20     constitutional right during the investigation of the Defendant.

21

22  7.4. Provide a brief description of all Statements and Documents that are relevant to any of the

23   requests described above that are not being produced due to a claim of privilege or protection

24   under any law or theory. Provide a description of the law or privilege applicable to each non-

25   disclosed item.

26

27 **8.  Conclusion**

28

29 In summary the government embarked on an erroneous mission to attack the client's of the

30 Defendant, likely at the urging of an attorney providing government cronies privileged

31 information.   The government presented false and erroneous declarations to this Court to obtain

---

1   invalid injunctive relief and immediately launched a massive damaging publicity campaign.
2   After the government was handed defeat after defeat, they did not seek to retract their previous
3   erroneous publicity statements, rather they sought to retaliate.  Using evidence that they had
4   improperly seized, they obtained an indictment from an allegedly improperly biased Grand Jury
5   regarding errors on a tax return that had never been audited.  To cover-up the chicanery and
6   illegal actions that had previously occurred, they refused to provide discovery and exculpatory
7   evidence to the Defendant.  During this case the government has:
8
9   • Violated Federal Rule of Procedure 16
10  • Violated the Defendant's Constitution right to exculpatory evidence
11  • Violated the Defendant's due process rights
12  • Potentially violated Grand Jury procedures
13  • Engaged in prosecutorial misconduct
14  • Engaged in Vindictive/Selective prosecution
15  • Countless other bad faith activities
16
17  This is not the government system that the Defendant risked his life for during combat in Iraq.  It
18  is not the government system designed or desired by the founding fathers and it is not the
19  government system that every American deserves.  This Court should send a strong message to
20  Attorney General's office that this behavior will not be tolerated and dismiss the charges with
21  prejudice, suppress evidence as described herein, or compel the government to produce required
22  discovery, Brady material, and Grand Jury transcripts.
23

24  **Cases**

25  Beardslee v. Woolford, 358 F.3d 560, 573 (9th Cir. 2004)..........................................................17
26  Bank of Nova Scotia v. U.S., 487 U.S. 250 (1988).....................................................................15
27  Berger v. U.S., 295 U.S. 78, 88 (1935). ....................................................................................17
28  Bernal-Obeso, 989 F.2d at 333-34 (9th Cir. 1993).....................................................................11
29  Brady v. Maryland, 373 U.S. 83, 87 (1963). ...............................................................................9

1    Carroll v. U.S. 267 U.S. 132, 155-56 (1925) .................................................................................13

2    Costello v. U.S., 350 U.S. 359, 362 (1956)...................................................................................15

3    Craig v. U.S., 131 F.3d 99, 102 (2d Cir. 1997);...........................................................................16

4    Franks v. Delaware, 438 U.S. 154, 155-56, 171-72 (1978); .......................................................14

5    In Re Biaggi, 478 F.2d 489, 494 (2d Cir. 1973)...........................................................................16

6    In Re Hastings, 735 F.2d 1261, 1268 (11th Cir. 1984); ..............................................................16

7    Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968) .................................................................12

8    Leon v. U.S., 468 U.S. 923 ...........................................................................................................14

9    Lindsey v. King, 769 F.2d 1034, 1041 (5 Cir. 1985) ...................................................................20

10   Mapp v. Ohio, 367 U.S. 643, 654 (1961).....................................................................................13

11   People of Territory of Guam v. Cruz, 70 F.3d 1090, 1092 (9th Cir. 1995); ..................................8

12   See Pittsburg Plate Glass Company v. U.S., 360 U.S. 395, 400 (1959)......................................16

13   Silverthorne Lumber Co. v. United States, 251 U.S. 385 (1920)..................................................13

14   Singh v. Prunty, 142 F.3d 1157 (9th Cir. 1998)...........................................................................11

15   U.S. v. Goodwin, 457 U.S. 368, 373 (1982). ...............................................................................17

16   U.S. v Juichang Chen 979 F.2d 714, 717-19 (9th Cir. 1992). .....................................................14

17   U.S. v Stokes, 124 F.3d 39, 45 (1st Cir 1997); ............................................................................17

18   U.S. v. Bagley 473 U.S. 667, 682 (1985).....................................................................................12

19   U.S. v. Bailleaux, 685 F.2d 1105, 1113-14 (9th Cir. 1982) ...........................................................6

20   U.S. v. Barrett, 703 F.2d 1076, 1081 (9th Cir. 1983).....................................................................9

21   U.S. v. Bernal-Obeso, 989 F.2d 331, 336 (9th Cir. 1993).............................................................11

22   U.S. v. Brumel-Alvarez, 991 F.2d 1452, 1461 (9th Cir. 1992) ....................................................11

23   U.S. v. Bryan, 868 F.2d 1032 (9th Cir. 1989) ................................................................................3

24   U.S. v. Gatto, 763 F.2d 1040, 1046 (9th Cir. 1985).......................................................................3

25   U.S. v. Harris, 543 F.2d 1247, 1251-53 (9th Cir. 1976).................................................................7

1   U.S. v. Higgs, 713 F.2d 39 (3rd Cir. 1983), ...................................................................21

2   U.S. v. Jensen, 608 F.2d 1349, 1357 (10th Cir. 1979) .....................................................7

3   U.S. v. Johnson, 525 F.2d 999 (2d Cir.1975); ..................................................................6

4   U.S. v. Kosovsky, 513 F.Supp. 1 (D.C. Okl. 1981). .........................................................20

5   U.S. v. Leonti, 326 F.3d 1111 (9th Cir. 2003) ...................................................................17

6   U.S. v. Lopez, 474 F.3d 1208, 1211 (9th Cir 2007). .........................................................17

7   U.S. v. Noel, 708 F. Supp. 177 (W.D. Tenn. 1989) ...........................................................8

8   U.S. v. Penix, 516 F.Supp. 248 (D.C. Okl. 1981). ............................................................21

9   U.S. v. Pollack, 534 F.2d 964 (D.C. Cir. 1976), ...............................................................20

10  U.S. v. Samango, 607 F.2d 877, 883 n.10 (9th Cir. 1979). .............................................15

11  U.S. v. Santiago, 46 F.3d 885 (9th Cir. 1995) ...................................................................3

12  U.S. v. Starusko, 729 F.2d 256 (3rd Cir. 1984) ...............................................................20

13  U.S. v. Strifler, 851 F.2d 1197, 1201 (9th Cir. 1988) .......................................................10

14  U.S. v. VonWillie, 59 F.3d 922, n.4 (9th Cir. 1995). .........................................................8

15  U.S. v. Walk, 533 F.2d 417, 418 (9th Cir. 1975) ...............................................................6

16  U.S. v. Yee, 129 F.R.D. 629, 635-36 (N.D. Ohio 1990). ...................................................8

17  United States v. Lloyd, 992 F.2d 348 (D.C. Cir. 1993) ......................................................4

18  United States v. Stewart, 872 F.2d 957, 962 (10th Cir. 1989) .......................................13

19  United States v. Wood, 57 F.3d 733, 737 (9th Cir. 1995) ...............................................10

20  Weeks v. U.S., 232 U.S. 383,398 (1914) ........................................................................13

21  Wong Sun v. U.S., 371 U.S. 471, 487-88 (1963) ............................................................13

22

23  Respectfully Submitted this 25th day of August 2008

24

25

26  David Jacquot