KAREN P. HEWITT
United States Attorney
FAITH A. DEVINE
California State Bar No. 146744
Assistant United States Attorney
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7173

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DAVID C. JACQUOT, <br><br> Defendant. | No. 08CR1171-W <br><br> GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, SUPPRESS EVIDENCE AND COMPEL DISCOVERY TOGETHER WITH EXHIBITS A-C <br><br> DATE: September 8, 2008 <br><br> TIME: 2:00 p.m. |

The United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Faith A. Devine, Assistant United States Attorney, hereby files its response to Defendant David C. Jacquot's Motion to Dismiss, Suppress Evidence and Compel Discovery. This Response is based upon this Memorandum of Points, Exhibits A-C and the Declaration of IRS-CI Special Agent Sara Brana filed concurrently herewith.

**I**

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant has raised a number of issues in his motion. Most of the issues raised are either irrelevant, based upon pure speculation and conjecture, or the result of unresolved animosity over contentious civil litigation between the IRS and Xelan, Inc ("Xelan"). This case is about Defendant's failure to report all of the income he received from Xelan on his law corporation tax returns for the years 2001 and 2002. In an attempt to divert attention from the charged offenses in this case, Defendant

focuses on the long history of civil litigation between the IRS and Xelan as well as the Government's criminal investigation of certain control persons of Xelan and its affiliated entities. In responding to Defendant's motion, the Government will only address those issues which it believes are relevant to this case. The Government will not debate the propriety of the parallel civil litigation or rebut the details of wins and losses.

As Defendant admits, the civil litigation between the IRS and Xelan was settled resulting in the payment of approximately $100 million in taxes to the IRS. Defendant attempts to attribute bad faith and ill motive on behalf of the Government because the Government did not prevail on a motion for a <u>preliminary</u> injunction and it has not filed criminal charges based upon the conduct alleged in the civil injunction proceedings. The Government contends that the initial probable cause determinations made by the court to support a search warrant of xelan's offices and a TRO were correct. To illustrate the disingenuousness of Defendant's argument to the court about this issue, the Government attaches to this Response as Exhibit A, the Defendant's own statement just 10 days prior to filing his motion that "it is unfortunate that the activities of Les Buck, Tom Roberts, and others will slide by to the tune of countless millions of dollars in tax loss but prosecution priorities are your business, not mine....I have information and know where documents can be obtained that you would find interesting and are topics I am confident that you are currently unaware of"[1]. Defendant's own words indicate that evidence of tax fraud involving millions of dollars in tax loss remains concealed from the Government.

The Government concedes that amongst Defendant's inflammatory and untrue accusations against the Government are legal arguments that are relevant to this case. First, Defendant claims that the Government has not complied with its discovery obligations and that he is entitled to more than is required under Rule 16, <u>Brady/Giglio</u> and <u>Jencks</u>. Second, Defendant claims that he should be entitled to disclosure of grand jury materials and that the indictment should be dismissed based upon alleged misconduct occurring before the grand jury. Third, Defendant contends that the indictment should be

---

[1] In this unsolicited e-mail from Defendant to the AUSA assigned to this case, Defendant asserts that the communication is subject to Federal Rule of Evidence 410. The Government was not engaged in plea discussions with Defendant and therefore contends that this communication is not protected by Federal Rule of Evidence 410. Furthermore, the communication is not being offered against the Defendant but merely to show that the arguments he has set forth to the court under penalty of perjury lack credibility in light of his prior statement.

dismissed on grounds of selective prosecution and/or prosecutorial misconduct. Fourth, Defendant claims that evidence should be suppressed or the indictment should be dismissed because of alleged Fourth Amendment violations that occurred in connection with the search of Xelan's offices. Finally, Defendant argues that evidence should be suppressed or the indictment should be dismissed based upon alleged violations of the attorney-client privilege and wants this court to hold an evidentiary hearing to establish these alleged violations.

As set forth below, these arguments have no merit. Defendant's discovery requests go well beyond what is relevant to this case and what the Government is legally obligated to disclose. Defendant has not established grand jury abuse, selective prosecution, or prosecutorial misconduct. Defendant has not established that he has standing to assert either an alleged fourth amendment violation or violation of the attorney-client privilege. Therefore, he should not be permitted to conduct an evidentiary hearing.

## II

## STATEMENT OF FACTS

Defendant David C. Jacquot ("Jacquot") is an attorney licensed in Idaho, Washington and California. He operates his law practice through his law corporation DJPA of which he is the 100% shareholder. He represents himself as an expert in tax law as well as criminal defense.

From 1998 to May 2004, Jacquot was the General Counsel for Xelan, Inc. ("Xelan"), a financial planning company that specialized in managing assets for physicians, dentists, and other medical professionals. Jacquot had a written agreement with Xelan in which DJPA received a monthly salary, management bonuses, and a percentage of the net profits of Xelan in return for Jacquot's legal representation of Xelan and its related entities. This agreement also provided that Xelan would reimburse DJPA for all expenses of the law firm including salaries to DJPA employees. Jacquot was treated by Xelan as an independent contractor and not an employee.

1  In 2001, Xelan paid DJPA compensation for legal services which totaled approximately $469,139.76[2]. These funds were deposited by Jacquot into the DJPA business checking account at First National Bank during the calender year 2001.

On September 15, 2002, Jacquot signed the DJPA 2001 U.S. Corporate Income Tax Return under penalty of perjury. This return was received by the IRS on September 18, 2002. In line item 11, Jacquot represented that the gross income to DJPA in 2001 was $344,250. This statement is false because bank records and Xelan records show that DJPA received at least $469,139.76 in compensation during 2001. Thus, Jacquot understated the gross income of DJPA by at least $124,889.76.

In 2002, Xelan paid DJPA compensation for legal services which totaled approximately $876,205.61[3]. These funds were deposited by Jacquot into the DJPA business checking account at First National Bank during the calender year 2002.

On September 15, 2003, Jacquot signed the DJPA 2002 U.S. Corporate Income Tax Return under penalty of perjury. This return was received by the IRS on September 22, 2003. In line item 11, Jacquot represented that the gross income to DJPA in 2002 was $745,578. This statement is false because bank records and Xelan records show that DJPA received at least $876,205.61 in compensation during 2002. Thus, Jacquot understated the gross income of DJPA by at least $130,627.61.

### III

### **PROFFER OF EVIDENCE TO BE INTRODUCED AT TRIAL**

To illustrate the simplicity of this case and to show that it is not hiding the ball, the Government provides a proffer of the evidence it will introduce at trial in its case-in-chief. Most of the evidence was obtained through subpoenas or the voluntary production of documents from the Xelan Bankruptcy Trustee. Some computer records and employment records are obtained from Xelan's files and the forensic images of Xelan's computers that were obtained pursuant to a search warrant conducted on November 4, 2004.

---

[2] This amount does not include funds paid to DJPA by Xelan for expense and payroll reimbursements during the calender year 2001.

[3] This amount does not include funds paid to DJPA by Xelan for expense and payroll reimbursements during the calender year 2002.

1 Unless Defendant raises frivolous business records authentication objections, the Government
2 expects that its case-in-chief will last no more than two days. The Government intends to call IRS
3 Special Agent Van Nguyen who will introduce into evidence a total of 39 checks that were written by
4 Xelan entities to DJPA for legal services. The Government will show that the checks were deposited
5 into the DJPA account and spent by Defendant. The Government will introduce contracts that DJPA
6 and Defendant had with Xelan and its affiliated entities which establish that he was paid compensation
7 for legal services. The Government reserves the right to call a live percipient witness to also establish
8 that Defendant had a contract with Xelan.

9 In addition to the testimony of Special Agent Nguyen, the Government will call former Xelan
10 controller Cheryl Bartley. She will testify that Defendant had a contractual relationship with Xelan and
11 was paid compensation for legal services. Ms. Bartley will introduce into evidence certain account
12 payable ledgers, charts of account for Xelan, and invoices showing that the 39 checks that were
13 deposited into the DJPA account were income. Since some of these records were downloaded from a
14 forensic image of Xelan's computer systems, the Government will call IRS-CI Special Agent Roger
15 Lange to authenticate the records and establish their authenticity. The Government also intends to call
16 IRS-CI Special Agent Sara Brana to authenticate any records that were seized from the search of
17 Xelan's offices on November 4, 2004.

18 Finally, the Government will call IRS Revenue Agent Douglas Sanderson who will introduce
19 into evidence the DJPA Corporate Income Tax Returns filed with the IRS for the years 2001 and 2002
20 which are self prepared and signed under penalty of perjury by Defendant. Mr. Sanderson will then
21 testify that in the tax year 2001, exactly 21 checks totaling $469,139.76 that were deposited into the
22 DJPA bank account should have been reported as income on the DJPA tax return. He will conclude that
23 the DJPA income for that year was understated by $124,889.76. Mr. Sanderson will testify that in the
24 tax year 2002, exactly 18 checks totaling $876,205.61 that were deposited into the DJPA bank account
25 should have been reported as income on the DJPA tax return. He will then conclude that the DJPA
26 income for that year was understated by $130,627.61.

27 To establish willfulness, the Government will introduce evidence of Defendant's education and
28 experience in tax law. This may include calling a live witness to testify about Defendant's knowledge

1  of tax law, records from law schools where he has obtained specialized degrees in tax law, and
2  Defendant's promotional materials.

3      Contrary to Defendant's assertions, the Government has provided all of these records to
4  Defendant and has also provided Defendant with a detailed declaration signed by Cheryl Bartley. The
5  Government has also provided Defendant with copies of Xelan tax records including 1099's issued by
6  the Xelan entities to Defendant and related entities.

## IV

## POINTS AND AUTHORITIES

### A. DISCOVERY

10      On June 2, 2008, the Government filed its Response to Defendant's Discovery Motion. The
11  Government's response sets forth its position related to the discovery issues in this case. The
12  Government will not repeat these arguments but, instead, attaches a copy of its prior Response as
13  Exhibit B and incorporates its legal arguments by reference. See, Exhibit B.

14      Contrary to Defendant's assertions, the Government did not refuse to provide discovery. The
15  Government simply informed the Defendant that it declined to respond to his discovery requests in the
16  format he proposed. because his proposed "simple chart" was not consistent with federal criminal law
17  or local discovery practice. See, Exhibit A

18      To date, the Government has produced over 4000 pages of discovery including relevant bank
19  records, tax returns, xelan accounting records, 1099's, and a sworn declaration of trial witness Cheryl
20  Bartley. In addition, the Government has made additional financial records requested by the defendant
21  available so they can be copied. Further, contrary to Defendant's contentions, Defendant has had
22  access( through his prior counsel James Frush) to the inventory of all items seized from the offices of
23  Xelan, Inc. on November 4, 2004 as well as access to a computer hard drive containing imaged copies
24  of every document seized from Xelan's offices. To the extent that imaged copies on the hard drive were
25  not sufficient, IRS-CI Special Agent John Weeks has allowed all of the parties involved in the
26  investigation of Xelan access to the original records.

27      By his motion, Defendant requests discovery of material that is not relevant to this case and not
28  required to be produced by the Government under Federal Rule of Criminal Procedure 16, Brady v.

Maryland, 373 U.S. 83 (1963) or Giglio v. United States, 405 U.S. 150 (1972). Defendant's requests, in the format presented, essentially require the Government to produce everything in its files relating to its investigation of Xelan, Inc. and its related entities. The Government has agreed to produce some of the requested material even though it is not relevant but respectfully declines to comply with each and every demand made by the Defendant absent a clear showing of what material is requested and that the material is relevant to the preparation of his defense against the charges in this case.

### 1. **Defendant is Not Entitled to Discover Material In Order to Prepare Selective Prosecution Claims**

Defendant asks that the court order discovery so he can establish that this prosecution is tainted by unconstitutional conduct. However, Supreme Court and Ninth Circuit law do not support his position.

In United States v. Armstrong, 517 U.S. 456 (1996), the Supreme Court considered whether a defendant raising a defense of selective prosecution was entitled to discovery of documents "material" to that defense. The Supreme Court rejected this contention, and held "that Rule 16(a)(1)© [predecessor to Rule 16(a)(1)(E)] authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, *but not to the preparation of selective-prosecution claims*." Armstrong, 517 U.S. at 463 (emphasis added). The Court reached this conclusion, in part, by interpreting another provision of Rule 16 that applies to this case -- Rule 16(a)(2), which precludes defendants from obtaining "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). This Rule specifically prohibit the type of discovery request made by Defendant.

Similarly, in United States v. Chon, 210 F.3d 990, 995 (9th Cir. 2000), the Ninth Circuit held that defendants who had been investigated by agents from the Navy Criminal Investigative Service ("NCIS") could not use Rule 16(a)(1) to obtain documents that they contended would show that the NCIS had violated the Posse Comitatus Act during the investigation of their case.[4/] Without specific

---

[4/] The defendants in Chon sought "materials pertinent to NCIS activities targeting civilians, (continued...)

1 evidence supporting their claim, they could not simply go on a "far reaching fishing expedition" through
2 the prosecution's files. Id. at 994.

3 Here, as in Armstrong and Chon, Defendant makes a claim that this prosecution is tainted by
4 unconstitutional conduct on the part of the government. Such defenses are more like "swords" than
5 "shields," Armstrong, 517 U.S. at 462, and therefore must satisfy a more rigorous standard before
6 allowing discovery. As the Supreme Court explained in the context of selective prosecution cases:

> If discovery is ordered, the Government must assemble from its own files documents that might corroborate or refute the defendant's claim. Discovery thus imposes many of the costs present when the government must respond to a prima facie case of selective prosecution. It will divert prosecutors' resources and may disclose the Government's prosecutorial strategy. <u>The justifications for a rigorous standard for the elements of selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim.</u>

14 Armstrong, 517 U.S. at 468 (emphasis added).

15 Cases dealing with other types of prosecutorial misconduct claims further support the notion that
16 defendants must do much more than make an allegation of improper Government action to secure the
17 court's assistance in compelling discovery. For example, defendants claiming a double jeopardy
18 violation because their federal prosecution followed an allegedly "sham" state prosecution must make
19 out a prima facie case that "federal prosecutors dominated or manipulated their state counterparts . . .
20 transforming [the state proceeding] into a de facto federal conviction." United States v. Zone, 403 F.3d
21 1101, 1105 (9th Cir. 2005); see also United States v. Guzman, 85 F.3d 823, 827 (1st Cir. 1996) (holding
22 that a defendant "must produce some evidence tending to prove that . . . one sovereign was a pawn of
23 the other, with the result that the notion of two supposedly independent prosecutions is merely a sham").

---

[4]/(...continued)
materials implicating widespread and repeated violations of the PCA [Posse Commitatus Act] in the State of Hawaii and within the United States, information reflecting warnings to the NIS/NCIS against violating the PCA, and materials of all Organized Crime Drug Enforcement Task Force activities targeting civilians." Id. at 994.

-8-

Absent an evidentiary showing of "undue coercion or collusion" in the investigations, such defendants are not entitled to discovery or an evidentiary hearing on their claims. Zone, 403 F.3d at 1106-07.

### 2. Brady Does Not Require the Government to Produce All Information That May Be Favorable to Defendant

The Supreme Court and the Ninth Circuit have repeatedly held that Brady does not create a general right to discovery and does not require pretrial disclosure of all information that may be "favorable" to the accused. "There is no general constitutional right to discovery in a criminal case, and Brady did not create one; as the Court wrote recently, 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . .' [Citation.]" Weatherford v. Bursey, 429 U.S. 545, 559 (1977); see also United States v. Bagley, 473 U.S. 667, 675 (1985) ("Thus, the prosecutor is not required to deliver his entire file to defense counsel . . ."); Kyles v. Whitley, 514 U.S. 419, 437 (1995) ("We have never held that the Constitution demands an open file policy . . .").

Instead, the Supreme Court has repeatedly held that the Due Process Clause requires only that the prosecution provide a defendant with evidence that is both favorable to the defendant and material to either guilt or punishment. Bagley, 473 U.S. at 682; Brady, 373 U.S. at 87. For Brady purposes,

> evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine the confidence in the outcome.

Bagley, 473 U.S. at 682. Therefore, Brady does not require the disclosure of all prosecution evidence that "tends" to exculpate or mitigate. Kyles v. Whitley, 514 U.S. 419, 437 (1995) ("[T]he rule in Bagley (and, hence, in Brady) requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate.").

The Ninth Circuit, of course, has followed the Supreme Court precedent. In United States v. Flores, 540 F.2d 432 (9th Cir. 1976), the court held: "Brady does not create any pre-trial discovery privileges not contained in the Federal Rules of Criminal Procedure." Id. at 438. Flores specifically rejected the notion that the prosecution must supply all "evidence useful in the impeachment of a government witness." Id. "[T]he prosecution does not have a constitutional duty to disclose every bit

1 of information that might affect the jury's decision; it need only disclose information favorable to the
2 defense that meets the appropriate standard of materiality." United States v. Gardner, 611 F.2d 770,
3 774-75 (9th Cir. 1980).

4       The United States is not obligated under Brady to furnish a defendant with information which
5 he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of
6 disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the
7 defendant. In such case, the United States has not suppressed the evidence and consequently has no
8 Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

9       The Government is well aware of its obligations under Brady and Giglio. The Government
10 understands that, depending on the witnesses called at trial and the evidence presented, some of the
11 types of information sought by Defendant may or may not meet the Brady/Bagley materiality standard.
12 The Government also understands that it is under a continuing obligation to make Brady determinations
13 with respect to such information. Nothing more is required at this time. See Kyle v. Whitley, 514 U.S.
14 419, 437 (1995) ("[T]he prosecution, which alone can know what is undisclosed, must be assigned the
15 consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when
16 the point of 'reasonable probability' is reached."); United States v. Causey, 356 F. Supp. 2d 681, 688
17 (S.D. Tex. 2005) ("Since Brady and its progeny neither establish nor govern a rule of discovery but,
18 instead, a self-executing constitutional rule that due process requires the prosecutor to disclose evidence
19 favorable to the accused that is material to guilt or punishment, the court concludes that defendants'
20 motions for production of Brady material should be denied.").

21       **B.**    **DISCLOSURE OF GRAND JURY MATERIAL/CHALLENGES TO GRAND**
22             **JURY PROCEEDINGS**

23      In his motion, Defendant requests disclosure of grand jury material in order to challenge the
24 grand jury proceedings in this case. Defendant also requests that the court dismiss the indictment
25 claiming that the indictment on its face establishes that prejudicial evidence was presented to the grand
26 jury about his relationship with Xelan, Inc. However, neither Supreme Court or Ninth Circuit law
27 support his request.

28

1. **Defendant Has Not Met His Burden of Establishing That Disclosure of Grand Jury Material is Appropriate**

Grand jury proceedings are presumptively secret. Fed. R.Crim. Pr. 6(e). However, Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) provides that a court may authorize disclosure of grand jury transcripts "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Courts have interpreted this to mean that defendants seeking disclosure of grand jury materials must show a "particularized and compelling need" for the materials. United States Industries, Inc. v. U.S. Dist. Court for Southern Dist. of Cal., Central Division, 345 F.2d 18, 21 (9th Cir.1965). "A trial judge should order disclosure of grand jury transcripts only when the party seeking them has demonstrated that a particularized need exists which outweighs the policy of secrecy." United States v. Walczak, 783 F.2d 852, 857 (9th Cir.1986) (citing Pittsburgh Plate Glass co. v. United States, 360 U.S. 395, 400 (1959)) (internal quotations and ellipses omitted). Neither common variety "fishing expeditions" nor speculation about what one may find in the transcripts meets the particularized need standard. See United States v. Kim, 577 F.2d 473, 478 (9th Cir.1978); Walczak, 783 F.2d at 857. The burden is on the defendant to show that disclosure of grand jury transcripts is appropriate. See Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400 (1959).

2. **Defendant Has Not Established a Sufficient Basis for the Court to Review The Grand Jury Proceedings**

The Supreme Court has described the grand jury "as a constitutional fixture in its own right," "older than our Nation itself," and belonging "to no branch of the institutional Government." United States v. Williams, 504 U.S. 36, 47 (1992) (citation omitted); Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 399-400 (1959). The independent functioning of the grand jury and the secrecy of its proceedings have been zealously guarded by the Supreme Court. United States v. Sells Eng'g, Inc., 463 U.S. 418, 425 (1983).

Based upon this deep regard for the institution of the grand jury, and a deep skepticism about the value of allowing Defendants to impugn the integrity of grand jury proceedings, the Supreme Court has held that Indictments are presumed to be properly brought, and has repeatedly refused to permit

1 Defendants to attack their Indictments based upon claims that prosecutors presented inadequate,
2 incompetent, or illegally seized evidence, or that prosecutors failed to present exculpatory evidence.
3 Holt v. United States, 218 U.S. 245, 248 (1910) (inadequate evidence); Costello v. United States, 350
4 U.S. 359, 363 (1956) (hearsay evidence); United States v. Calandra, 414 U.S. 338, 344-45 (1974)
5 (illegally seized evidence); United States v. Williams, 504 U.S. 36 (1992) (exculpatory evidence). The
6 Court's discussion of this principle in Costello bears directly on this case:

> If indictments were held open to challenge on the ground that there was inadequate or
> incompetent evidence before the grand jury, the resulting delay would be great indeed.
> The results of such a rule would be that before trial on the merits a defendant could
> always insist on a kind of preliminary trial to determine the competency and adequacy
> of the evidence before the grand jury. That is not required by the Fifth Amendment. An
> indictment returned by a legally constituted and unbiased grand jury, like an information
> drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on
> the merits. The Fifth Amendment requires nothing more.

15 Costello, 350 U.S. at 363. As the Court stated in Williams: "A complaint about the quality or adequacy
16 of the evidence can always be recast as a complaint that the prosecutor's presentation was 'incomplete'
17 or 'misleading.'" Williams 504 U.S. at 54. The Williams Court reiterated the consistent theme of
18 Supreme Court decisions in this context by firmly rejecting the notion that a court's supervisory power
19 over the grand jury includes the power to entertain proceedings over such complaints: "Reviews of
20 facially valid indictments on such grounds would run counter to the whole history of the grand jury
21 institution, and neither justice nor the concept of a fair trial requires it." Id. (citation omitted).
22 As the Ninth Circuit has stated:

> A defendant may not properly challenge an indictment, sufficient on its face, on the
> ground that the allegations are not supported by adequate evidence. A motion to dismiss
> the indictment cannot be used as a device for a summary trial of the evidence. . . . The
> Court should not consider evidence not appearing on the face of the indictment.

27 United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996).

28

### 3. **Defendant Has Not Established a Basis for Dismissing the Indictment**

A district court may not dismiss an indictment for error in a grand jury proceeding unless the error prejudiced the defendant. United States v. Smith, 424 F.3d 992, 1003 (9th Cir. 2005), citing Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988). Substantial proof of grand jury bias is required to overturn an indictment. United States v. Al Mudarris, 695 F.2d 1182, 1186 (9th Cir. 1983).

One basis that may justify dismissal of an indictment is the presentation of perjury to the grand jury. To warrant dismissal of the indictment, Defendant must show that (a) "the prosecutor obtained an indictment by knowingly submitting perjured testimony to the grand jury," and that (b) such perjurious testimony was material. United States v. Claiborne, 765 F.2d 784, 791 (9th Cir. 1985) (abrogated on other grounds). "[I]f sufficient non-perjurious testimony exists to support the indictment, the courts will not dismiss the indictment due to the presence of perjurious evidence." Id. at 791. Defendant has not even attempted, much less satisfied, either of these onerous criteria.

### C. **MOTION TO DISMISS FOR SELECTIVE PROSECUTION**

To make out a prima facie claim for selective prosecution, the defense must make "a credible showing of different treatment of similarly situated persons." United States v. Armstrong, 517 U.S. 456, 470 (1996); see also id. at 468 (noting that the "rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim"). Defendant must also show that the prosecution is based upon an impermissible motive. United States v. Bourgeois, 964 F.2d 935, 941 (9th Cir. 1992). "Mere allegations" are simply not enough. Id. The Supreme Court, the Ninth Circuit, and other federal courts have repeatedly rejected showings far more credible than the speculation and innuendo asserted by Defendant in this case. See, e.g., Armstrong, 517 U.S. at 470 (holding that statistical study and affidavits did not make out colorable selective prosecution claim); United States v. Arenas-Ortiz, 339 F.3d 1066, 1069-70 (9th Cir. 2003) (rejecting extensive statistical analysis as insufficient under Armstrong); In re United States, 397 F.3d 274, 284-85 (5th Cir. 2005) (granting mandamus review and reversing district court's discovery order in a death penalty case because defendant's study was insufficient – "[a] much stronger showing, and more deliberative analysis, is required before a judge may permit open-ended discovery into a matter that goes to the core of a prosecutor's function and implicates serious separation of powers concerns.").

1  Defendant has not presented any evidence beyond conclusory assertions of misconduct.
2  Therefore, his motion to dismiss the indictment on this basis should be denied.

### D.  MOTION TO DISMISS FOR PROSECUTORIAL MISCONDUCT

Dismissal of an indictment for prosecutorial misconduct under the court's supervisory powers requires both that the misconduct "(1) be flagrant and (2) cause 'substantial prejudice' to the defendant." United States v. Ross, 372 F.3d 1097, 1110 (9th Cir. 2004).  Where, as here, there is no misconduct and defendant's motion is unsupported by fact or law, defendant's motion to dismiss for prosecutorial misconduct should be denied.

### E.  MOTION TO DISMISS/SUPPRESS EVIDENCE FOR ALLEGED 4TH AMENDMENT VIOLATIONS

The Supreme Court and the Ninth Circuit have clearly rejected 'vicarious" or "target" standing to assert Fourth Amendment rights. Rakas v. Illinois, 439 U.S. 128, 133-34 (1978)(refusing to extend standing to a party who was not a "victim' of the search); United States v. Taketa, 923 F.2d 665, 669-70 (9th Cir. 1991)(following Rakas and holding that a defendant did not have standing to challenge a search of another defendant's office). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Rakas at 134.

"In order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." Minnesota v. Carter, 525 U.S. 83, 88 (1998). A person's reasonable expectation of privacy may differ based upon the location of the search. United States v. Gonzalez, 328 F.3d 543, 547 (9th Cir. 2003). A lesser expectation of privacy exists in a commercial area than in a residential area. Id. (citing Carter at 90). "Indeed, `[a]n individual whose presence on another's premises is purely commercial in nature...has no legitimate expectation of privacy in that location'". Id.

In this case, Defendant has failed to establish that he has standing to challenge the search of Xelan's offices. As set forth in Exhibit C, Defendant sent a letter stated that he was fired by Xelan in May 2004. His letterhead indicated that his address was "formerly at" 401 West A Street, Suite 2210 San Diego, CA 92101 and that he was "in transit to a new location". See, Exhibit C. The search of

1 Xelan's offices occurred on November 4, 2004 which is six months after he left Xelan. Defendant was
2 not present at the search. He was not an owner or a leaseholder of the premises. Defendant has failed
3 to demonstrate the nature of his relationship to the premises located at 401 West "A" Street Suite 2210
4 on November 4, 2004, how he had an expectation of privacy in those premises on the day of the search,
5 and whether any of the items seized from that location constitute his personal property.

6    For these reasons, Defendant should not be permitted to conduct an evidentiary hearing in order
7 to challenge the search warrant conducted at xelan's offices on November 4, 2004.

### F.    ALLEGED VIOLATIONS OF THE ATTORNEY-CLIENT PRIVILEGE

9    In his motion, Jacquot makes several conclusory allegations that the Government violated the
10 attorney-client privilege. However, he fails to specify what relationship the Government is alleged to
11 have interfered in. He also fails to specify whether he is asserting the privilege as a client of an attorney
12 he has retained to represent him or whether he is asserting the privilege on behalf of a client who objects
13 to the disclosure of privileged communications to the Government. The attorney-client privilege can
14 only be asserted by the client. See, United States v. Plache, 913 F.2d 1375, 1381 (9th Cir.
15 1990)(defendant ex-officer of corporation in receivership has no right to assert attorney-client privilege
16 of corporation to block admission of evidence at his criminal trial); Henderson v. United States, 815
17 F.2d 1189, 1192 (8th Cir. 1987)(defendant lacked standing to object to testimony of former attorney of
18 girlfriend on basis of attorney-client privilege which "belongs to and exists solely for the benefit of the
19 client"). Without more specificity as to the relationship the Government has allegedly interfered with,
20 Defendant's motions to dismiss the indictment or suppress evidence should be denied for failure to
21 establish standing.

22    Even assuming that Defendant has standing to assert the attorney-client privilege, the
23 Government is confident that no such violations will be found by the court for several reasons. First,
24 as explained above, by his own admission, Defendant was terminated from his employment relationship
25 with Xelan, Inc six months before the search of Xelan's offices was conducted. Second, as set forth in
26 the Declaration of IRS-CI Special Agent Sara Brana, law enforcement agents did not search any offices
27 or premises that were occupied by lawyers. Third, the search team that conducted the search included
28 a taint team that was present to review any items that may be potentially privileged but were within the

scope of the warrant. All potentially privileged items have been segregated and not reviewed by members of the prosecution team. Fourth, no computers were removed from the premises. The Government made forensic images of the computers and has only conducted limited searches that are within the scope of the warrant. Thus, even if Defendant had standing to assert the attorney-client relationship, he would not be able to establish that the Government deliberately intruded into the relationship and that he was actually or substantially prejudiced by such intrusion. See, United States v. Green, 962 F.2d 938, 941 (1992)("Sixth Amendment is violated only when the government's action `substantially prejudices the defendant'"); United States v. Hernandez, 937 F.2d 1490, 1493 (9th Cir. 1991)(government's invasion of attorney-client privilege by itself does not violate Sixth Amendment; defendant must have been prejudiced); United States v. Rogers, 751 F.2d 1074, 1077 (9th Cir. 1985)(indictment may not be dismissed for government interference with the attorney-client relationship absent prejudice to defendant).

## V

## **CONCLUSION**

For the foregoing reasons, the Government requests that defendant's motions be denied.

DATED: August 29, 2008                         Respectfully submitted,

                                                     KAREN P. HEWITT
                                                     United States Attorney

                                                     /S/
                                                     FAITH A. DEVINE
                                                     Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08cr1171-W |
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| DAVID C. JACQUOT., | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Faith A. Devine, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, SUPPRESS EVIDENCE AND COMPEL DISCOVERY TOGETHER WITH EXHIBITS A-C on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies him.

David C. Jacquot, Esq. - dave@jacquotlaw.com

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 29, 2008.

s/ Faith A. Devine
FAITH A. DEVINE