# TABLE OF CONTENTS FOR EXHIBITS

## U.S. v. DAVID JACQUOT, 08CR1171-W

| Exhibit | Document | Page |
|---|---|---|
| A | E-mail communication from Defendant to Government | 1 |
| B | Government's Response to Defendant's Protective Discovery and Suppression Motion | 4 |
| C | Letter written by Defendant, dated May 26, 2004 | 16 |

# EXHIBIT A

**Devine, Faith (USACAS)**

| | |
|---|---|
| **From:** | David Jacquot [dave@jacquotlaw.com] |
| **Sent:** | Friday, August 15, 2008 7:02 PM |
| **To:** | Devine, Faith (USACAS) |
| **Subject:** | RE: Response to Letter dated August 4, 2008 |

**Settlement Negotiations Protected by FRE 410**

Dear Ms. Devine:

Thank you for your response.

I apologize for wasting your time with the proposed Deferred Prosecution agreement. Based on statements of Agents Weeks and Shrek and on information that Jim Frush passed on regarding statements you made, I was under the impression that you desired my cooperation. It is unfortunate that the activities of Les Buck, Tom Roberts, and others will slide-by to the tune of countless millions of dollars in tax loss, but prosecution priorities are your business, not mine. If you later develop an interest in pursing these individuals, I have information and know where documents can be obtained that you would find interesting and are topics I am confident that you are currently unaware of.

In regards to the discovery issues, I respectfully disagree that you have provided all that is required by Rule 16, the Brady line of cases, and other applicable law. We will let Judge Whelan decide this issue on the 9th.

I will pick up the tapes and the transcripts you described in your e-mail at the hearing on the 9th.

I still desire to copy the 4 boxes of xelan bank documents that Agent Nguyen said were available, but to conserve costs, I am going to wait until after the Court rules on additional discovery so that I can hire a copy service to do the whole job at one time.

Sincerely,

David Jacquot

---

**From:** Devine, Faith (USACAS) [mailto:Faith.Devine@usdoj.gov]
**Sent:** Thursday, August 14, 2008 10:46 AM
**To:** David Jacquot
**Subject:** Response to Letter dated August 4, 2008

Dear Mr. Jacquot,

We have reviewed the settlement proposal contained in your letter of August 4, 2008 and find it unacceptable. The government is not prepared to settle this case in return for Deferred Prosecution.

The government's discovery intentions are set forth in its Response to your discovery motion which was filed with the court prior to the June 9, 2008 Motion Hearing/Trial Setting. That position has not changed and we decline to respond to your discovery in the format you have proposed. The Response filed by the government is consistent with the local practice in this district and with applicable federal criminal law.

We believe that we have complied with our discovery obligations pursuant to Federal Rule of Criminal Procedure 16 and our Brady/Giglio obligations. As set forth in our discovery response, all Jencks material and

1



expert witness summaries will be provided at a reasonable time prior to a firm trial date. Although not legally required and not relevant to this case, we will voluntarily provide you with copies of the Xelan Administrative Services and Xelan Investment Services, Inc tax returns for the years 2001-2002 as well as transcripts and tapes of recordings made by undercover agents during seminars conducted by Xelan in which you were present. These will be provided to you at the September 9, 2008 motion hearing unless you wish to send a representative to pick them up prior to that date.

Very truly yours,

Faith A. Devine

Assistant U.S. Attorney

Southern District of California

880 Front Street, 6th Floor

San Diego, California 92101

Phone: (619) 557-7173

Fax: 557-7055

e-mail: Faith.Devine@usdoj.gov

3

# EXHIBIT B

4

1  KAREN P. HEWITT
   United States Attorney
2  FAITH A. DEVINE
   California State Bar No. 146744
3  Assistant United States Attorney
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-7173

6  Attorneys for Plaintiff
   United States of America
7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,        )   No. 08CR1171-W
                                     )
11                 Plaintiff,        )   GOVERNMENT'S RESPONSE TO
                                     )   DEFENDANT'S PROTECTIVE DISCOVERY
12       v.                          )   AND SUPPRESSION MOTION
                                     )
13                                   )   DATE: June 9, 2008
    DAVID C. JACQUOT,                )
14                                   )   TIME: 2:00 p.m.
                   Defendant.        )
15  _____)

16

17
          The United States of America, by and through its counsel, Karen P. Hewitt, United States
18
    Attorney, and Faith A. Devine, Assistant United States Attorney, hereby files its response to Defendant
19
    David C. Jacquot's Protective Discovery and Suppression Motion.
20

21
                                                    I
22
                                      **STATEMENT OF THE CASE**
23
          Defendant David C. Jaquot ("Jacquot") is charged in a two count indictment alleging violations
24
    of Title 26, United States Code, Section 7206(1) (False Statements on Tax Return). The indictment
25
    alleges that Jacquot made false statements on the 2001 and 2002 U.S. Corporate Income Tax Returns
26
    for his law corporation David C. Jacquot, JD, LLM, PA ("DJPA").
27

28

5

## II

## STATEMENT OF FACTS

Defendant David C. Jacquot ("Jacquot") is an attorney licensed in Idaho, Washington and California. He operates his law practice through his law corporation DJPA of which he is the 100% shareholder. He represents himself as an expert in tax law as well as criminal defense.

From 1998 to May 2004, Jacquot was the General Counsel for Xelan, Inc. ("Xelan"), a financial planning company that specialized in managing assets for physicians, dentists, and other medical professionals. Jacquot had a written agreement with Xelan in which DJPA received a monthly salary, management bonuses, and a percentage of the net profits of Xelan in return for Jacquot's legal representation of Xelan and its related entities. This agreement also provided that Xelan would reimburse DJPA for all expenses of the law firm including salaries to DJPA employees. Jacquot was treated by Xelan as an independent contractor and not an employee.

In 2001, Xelan paid DJPA compensation for legal services which totaled approximately $469,139.76[1]. These funds were deposited by Jacquot into the DJPA business checking account at First National Bank during the calender year 2001.

On September 15, 2002, Jacquot signed the DJPA 2001 U.S. Corporate Income Tax Return under penalty of perjury. This return was received by the IRS on September 18, 2002. In line item 11, Jacquot represented that the gross income to DJPA in 2001 was $344,250. This statement is false because bank records and Xelan records show that DJPA received at least $469,139.76 in compensation during 2001. Thus, Jacquot understated the gross income of DJPA by at least $124,889.76.

In 2002, Xelan paid DJPA compensation for legal services which totaled approximately $876,205.61[2]. These funds were deposited by Jacquot into the DJPA business checking account at First National Bank during the calender year 2002.

On September 15, 2003, Jacquot signed the DJPA 2002 U.S. Corporate Income Tax Return under penalty of perjury. This return was received by the IRS on September 22, 2003. In line item 11,

---

[1] This amount does not include funds paid to DJPA by Xelan for expense and payroll reimbursements during the calender year 2001.

[2] This amount does not include funds paid to DJPA by Xelan for expense and payroll reimbursements during the calender year 2002.

-2-

1  Jacquot represented that the gross income to DJPA in 2002 was $745,578. This statement is false
2  because bank records and Xelan records show that DJPA received at least $876,205.61 in compensation
3  during 2002. Thus, Jacquot understated the gross income of DJPA by at least $130,627.61.

## III
## POINTS AND AUTHORITIES

**A.    DISCOVERY**

In an attempt at simplification, this memorandum will address two specific areas of discovery: (1) items which the Government either has provided or will voluntarily provide; and (2) items which go beyond the strictures of Rule 16 and are not discoverable.

**1.    Items Which The Government Has Already Provided Or Will Voluntarily Provide**

a.    The Government will disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the Government intends to use the statement at trial. The Government will also disclose and make available for inspection, copying or photographing the following: (1) any relevant written or recorded statement by the defendant if the statement is within the Government's possession, custody, or control, and the attorney for the Government knows--or through due diligence could know--that the statement exists,[3/] (2) that portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent, and (3) the defendant's recorded testimony before a grand jury relating to the charged offense;

b.    The Government will permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the Government's possession, custody or control

---

[3/]    However, "the Government is not obligated by Rule 16(a) to anticipate every possible defense, assume what the defendant's trial testimony...will be, and then furnish the defendant with otherwise irrelevant material that might conflict with the defendant's testimony." United States v. Gonzalez-Rincon, 36 F.3d 859, 865 (9th Cir. 1994) (citation omitted).

-3-

7

and (1) the item is material to preparing the defense; (2) the Government intends to use the item in its case-in-chief at trial; or (3) the item was obtained from or belongs to the defendant;[4/]

      c.     The Government will permit the defendant to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if: (1) the item is within the Government's possession, custody or control; (2) the attorney for the Government knows--or through due diligence could know--that the item exists; and (3) the item is material to preparing the defense or the Government intends to use the item in its case-in-chief at trial. The Government will also disclose to the defendant a written summary of any testimony that it intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial;[5/]

      d.     The Government will furnish to the defendant a copy of his prior criminal record, if any, that is within the Government's possession, custody or control if the attorney for the Government knows--or through due diligence could know--that the record exists;[6/]

      e.     Except as set forth below in footnote 5, the Government will disclose the statements of witnesses (as defined in 18 U.S.C. § 3500) to be called in its case-in-chief two weeks before trial;[7/]

---

[4/] Rule 16(a)(1)(E) (formerly 16(a)(1)(C)) authorizes defendants to examine only those government documents material to the preparation of their defense against the Government's case-in-chief. United States v. Armstrong, 517 U.S. 456 (1996); United States v. Chon, 210 F.3d 990 (9th Cir. 2000). Further, Rule 16 does not require the disclosure by the prosecution of evidence it intends to use in rebuttal. United States v. Givens, 767 F.2d 574 (9th Cir. 1984).

[5/] Government does not have "to disclose every single piece of paper that is generated internally in conjunction with scientific tests." United States v. Iglesias, 881 F.2d 1519 (9th Cir. 1989).

[6/] The Government fulfills its duty of discovery under Rule 16(a)(1)(D) by revealing a defendant's record of prior convictions and any FBI rap sheet. United States v. Audelo-Sanchez, 923 F.2d 129 (9th Cir. 1990).

[7/] Production of these statements is governed by the Jencks Act and need occur only after the witness testifies on direct examination. United States v. Mills, 641 F.2d 785, 789-790 (9th Cir. 1981); United States v. Dreitzler, 577 F.2d 539, 553 (9th Cir. 1978); United States v. Walk, 533 F.2d 417, 418-419 (9th Cir. 1975). For Jencks Act purposes, the Government has no obligation to provide the defense with statements in the possession of a state agency. United States v. Durham, 941 F.2d 858 (9th Cir. 1991). Prior trial testimony does not fall within the scope of the Jencks Act. United States v. Isigro, 974 F.2d 1091, 1095 (9th Cir. 1992). The Government will provide the grand jury transcripts of witnesses who have testified before the grand jury if said testimony relates to the subject matter of their trial testimony. Finally, the Government reserves the right to withhold the statement of any particular witness.

1     f. The Government will disclose in advance of trial the general nature of any evidence it intends to introduce at trial pursuant to Rule 404(b) of the Federal Rules of Evidence;[8/]

   g. The Government will make every effort to preserve evidence it deems to be relevant and material to the present case;[9/]

   h. The Government will disclose the contents of all relevant consensually monitored conversations between the defendant and government agents or witnesses;[10/]

   i. Prior to any sentencing hearing, the Government will provide the defendant with all sentencing information as required by law;

   j. The Government acknowledges and recognizes its continuing obligation to disclose exculpatory evidence and discovery as required by Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), the Jencks Act, and Rules 12 and 16 of the Federal Rules of Criminal Procedure, and will abide by their dictates.[11/]

---

[8/] However, "[e]vidence should not be treated as 'other crimes' evidence when the evidence concerning the other act and the evidence concerning the crime charged are so inextricably intertwined." United States v. Soliman, 813 F.2d 277, 279 (9th Cir. 1987) (citations omitted).

[9/] A failure to gather and preserve evidence does not violate due process absent bad faith. Arizona v. Youngblood, 488 U.S. 51 (1988); see also United States v. Rivera-Relle, 322 F.3d 670 (9th Cir. 2003) (when potentially exculpatory evidence is destroyed, the government violates a defendant's right to due process if the unavailable evidence possessed "exculpatory value that was apparent before the evidence was destroyed, and is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means").

[10] The Government does not have to prepare verbatim transcripts of audio and video recordings for the defense. United States v. Zavala, 839 F.2d 523, 528 (9th Cir. 1988).

[11/] Brady v. Maryland requires the Government to produce all evidence that is material to either guilt or punishment. Brady v. Maryland, 373 U.S. 83 (1963). The Government's failure to provide the information required by Brady is constitutional error only if the information is material, that is, only if there is a reasonable probability that the result of the proceeding would have been different had the information been disclosed. Kyles v. Whitley, 514 U.S. 419 (1995). A defendant has the burden of showing that withheld evidence is material. United States v. Si, 343 F.3d 1116 (9th Cir. 2003). However, neither Brady nor Rule 16 require the Government to disclose inculpatory information to the defense. United States v. Arias-Villanueva, 998 F.2d 1491 (9th Cir. 1993). As a general matter, information "beyond that contained in the government's file" is not subject to the strictures of Brady. United States v. Plunk, 153 F.3d 1011, 1028 (9th Cir. 1998).

Further, the defense is hereby notified that the Government intends to use in its case-in-chief at trial all evidence which the defense is entitled to discover under Rule 16 subject to any relevant limitations prescribed in Rule 16.

### 2. Items Which Go Beyond The Strictures Of Rule 16

#### a. General Brady Information Or General Rule 16 Discovery

Under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), the Government must disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. See United States v. Gardner, 611 F.2d 770, 774 (9th Cir. 1980). The Supreme Court described the test for materiality as whether or not the evidence "creates a reasonable doubt that did not otherwise exist." United States v. Agurs, 427 U.S. at 112; United States v. Gardner, 611 F.2d at 774. The Ninth Circuit has added that Brady "does not require the Government to create exculpatory material that does not exist," United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980), but "only requires that the Government supply a defendant with exculpatory information of which it is aware." United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976). Accordingly, the Government in this case will comply with the Brady mandate but rejects any affirmative duty to create or seek out evidence for the defense.[12]

#### b. Information Pertaining to Government Witnesses

Regarding prospective government witnesses, the Government will provide the defendant with the following items prior to any such witness' trial testimony:[13]

(1) The terms of all agreements (or any other inducements) it has made with government witnesses, if they are entered into;

(2) All relevant exculpatory evidence concerning the credibility or bias of government witnesses as mandated by law; and,

(3) Any record of prior criminal convictions (of which the Government is aware) that could be used to impeach a government witness.[14]

---

[12] Further, the Government will not provide information which "arguably could be helpful or useful to the defense" because it does not meet that Brady standard.

[13] There are no confidential informants or cooperating witnesses in this case.

[14] The Government, however, opposes the disclosure of rap sheet information. See United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976) (Government has no obligation to supply a defendant with the criminal records of the Government's intended witnesses).

-6-

Furthermore, any uncharged prior misconduct attributable to government witnesses, all promises made to and consideration given to such witnesses by the Government, and all threats of prosecution made to government witnesses by the Government will be disclosed if required by the doctrine of Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 450 U.S. 150 (1972). The Government will not provide information which "arguably could be helpful or useful to the defense" because it does not meet the Brady standard.

            c.    **Oral Statements Made To Non-Government Witnesses**

A defendant is not entitled to discovery of oral statements made by him to persons who were not - at the time such statements were made - known by defendant to be government agents. The plain language of Rule 16 and relevant case law supports this position. Rule 16 unambiguously states that defendants are entitled to "relevant written or recorded statements" made by them. The rule limits discovery of oral statements to that "portion of any written record containing the substance of any relevant oral statement made [by the defendant] before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent," and "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." The statutory language clearly means that oral statements are discoverable only in very limited circumstances, and then, only when made to a known government agent.

In addition, a defendant is not entitled to those statements which may become his "statements" by virtue of his participation in the conspiracy. See In Re United States of America, 834 F.2d 283 (2d Cir. 1987); United States v. Roberts, 811 F.2d 257 (4th Cir. 1987); United States v. Penix, 516 F.Supp. 248 (D. Okl. 1981); United States v. Hall, 424 F.Supp. 508 (D. Okl.), aff'd, 536 F.2d 313 (10th Cir. 1978).[15]

            d.    **Government Documents And Records**

A defendant is not entitled to the wholesale disclosure of all documents and records in the Government's files. Rule 16, in pertinent part, provides:

---

[15] A defendant is not entitled to a pretrial hearing to determine the admissibility of coconspirator statements. United States v. Long, 706 F.2d 1044 (9th Cir. 1983).

-7-

11

> [T]his rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or <u>other government agent in connection with investigating or prosecuting the case</u> . . . .

The Government, as expressed previously, recognizes and embraces its obligations pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>Giglio v. United States</u>, 450 U.S. 150 (1972), the Jencks Act, and Rules 12 and 16.[16/] We shall not, however, turn over documents and records which are legally exempted from pretrial disclosure.[17/]

### e. Production Of Rough Notes

Although the Government has no objection to the preservation of agents' handwritten notes, we object to their production at this time. See <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews with prospective government witnesses or an accused). Further, the Government objects to any pretrial hearing concerning the production of rough notes. If during any evidentiary proceeding, certain rough notes become relevant, these notes will be made available.

Prior production of these notes is not necessary because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions <u>and</u> they have been approved or adopted by the witness. <u>United States v. Spencer</u>, 618 F.2d 605, 606-607 (9th Cir. 1980); <u>see also</u> <u>United States v. Kaiser</u>, 660 F.2d 724, 731-732 (9th Cir. 1981); <u>United States v. Griffin</u>, 659 F.2d 932, 936-938 (9th Cir. 1981).[18/]

---

[16/] However, "Brady does not create any pre-trial discovery privileges not contained in the Federal Rules of Criminal Procedure." <u>United States v. Abonce-Barrera</u>, 257 F.3d 959, 970 (9th Cir. 2001) (quoting <u>United States v. Flores</u>, 540 F.2d 432, 438 (9th Cir. 1976)). Summaries of witness interviews conducted by government agents (DEA 6, FBI 302) are not Jencks Act statements. <u>United States v. Claiborne</u>, 765 F.2d 784, 801 (9th Cir. 1985). Moreover, the failure to record Government interviews does not constitute <u>Brady</u> error. <u>United States v. Marashi</u>, 913 F.2d 724 (9th Cir. 1990).

[17/] The Government recognizes that the possibility remains that some of these documents may become discoverable during the course of the trial if they are material to any issue that is raised.

[18/] Although an agent's rough notes need not be disclosed pursuant to the Jencks Act, they must be disclosed pursuant to <u>Brady</u> if they contain exculpatory information.

12

  **f.**  **Addresses And Phone Numbers**
    **Of Government Witnesses**

While the Government will supply a tentative witness list with its trial memorandum, it vigorously objects to providing home addresses and telephone numbers and to providing a witness list at the present time. See United States v. Sukumolachan, 610 F.2d 685, 688 (9th Cir. 1980), and United States v. Conder, 423 F.2d 904, 910 (9th Cir. 1970) (addressing defendant's request for the addresses of actual government witnesses). A request for the home addresses and telephone numbers of government witnesses is tantamount to a request for a witness list and, in a non-capital case, there is simply no legal requirement that the Government supply a defendant with a list of the witnesses it expects to call at trial. Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dischner, 974 F.2d 1502 (9th Cir. 1992); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1974); United States v. Glass, 421 F.2d 832, 833 (9th Cir. 1969).[19/]

  **g.**  **Personnel Files Of Federal Agents**

Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984), the Government agrees to review the personnel files of its federal law enforcement witnesses and to "disclose information favorable to the defense that meets the appropriate standard of materiality." United States v. Cadet, 727 F.2d at 1467-68. Further, if counsel for the United States is uncertain about the materiality of the information within its possession, the material will be submitted to the court for in camera inspection and review. In this case, the Government will ask the affected law enforcement agency to conduct the reviews and report their findings to the prosecutor assigned to the case.

Further, the Government has no duty to examine the personnel files of state and local officers because they are not within the possession, custody or control of the Federal Government. United States v. Dominguez-Villa, 954 F.2d 562 (9th Cir. 1992).

---

[19/] Even in a capital case, a defendant is only entitled to receive a list of witnesses three days prior to commencement of trial. 18 U.S.C. § 3432. See also United States v. Richter, 488 F.2d 170 (9th Cir. 1973) (holding that defendant must make an affirmative showing as to need and reasonableness of such discovery). Likewise, agreements with witnesses need not be turned over prior to the testimony of the witness; United States v. Rinn, 586 F.2d 1113 (9th Cir. 1978), and there is no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Egger, 509 F.2d 745 (9th Cir. 1975); United States v. Cosby, 500 F.2d 405 (9th Cir. 1974).

1   Finally, in United States v. Jennings, 960 F.2d 1488 (9th Cir. 1992), the Ninth Circuit held that
2   the Assistant U.S. Attorney assigned to the prosecution of the case has no duty to personally review the
3   personnel files of federal law enforcement witnesses. In Jennings, the Ninth Circuit found that the
4   present Department of Justice procedures providing for a review of federal law enforcement witness
5   personnel files by the agency maintaining them is sufficient compliance with Henthorn. In this case,
6   the Government will comply with the procedures as set forth in Jennings.

### h. Grand Jury Records

The Supreme Court has recognized the long-established policy that maintains the secrecy of the grand jury proceedings. When disclosure is permitted, it is to be done discreetly and in a limited fashion. Dennis v. United States, 384 U.S. 855, 869 (1966); see also United States v. Procter & Gamble Co., 356 U.S. 677, 683 (1958). This judicial tradition has been codified in Fed. R. Crim. P. 6(e) which imposes an obligation of secrecy on all participants, except witnesses, in grand jury proceedings.

> The requirement of Rule 6(e) is that the defendant must make "a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." In the absence of such a showing, the proceedings of a grand jury are required to be kept secret.

United States v. Fife, 573 F.2d 369, 372 (6th Cir. 1976). The Supreme Court has also stated that the defense must show that "a particularized need" exists for grand jury records that outweighs the policy of secrecy. Pittsburgh Glass Co. v. United States, 360 U.S. 395, 399-400 (1959). In the instant case, the defendant has made neither a showing of "a particularized need" nor a showing of the existence of any grounds to dismiss the indictment because of matters occurring before the grand jury.[20]

### i. Other Discovery Requests

To the extent that the above does not answer all of the discovery requests, the Government opposes the motions on the grounds that there is no authority requiring us to provide the material.

---

[20] An accused must also overcome the strong presumption of legality and regularity that attaches to grand jury proceedings. In re Lopreato, 511 F.2d 1150, 1152 (1st Cir. 1975); see also In re Grand Jury Proceedings, 486 F.2d 85 (3d Cir. 1973); In re Inzirillo, 542 F.2d 90 (1st Cir. 1976). A witness' conclusory allegation that the grand jury process is being abused does not rebut the presumption. In re Inzirillo, 542 F.2d at 91. This circuit has further stated that a hearing on an asserted abuse of the grand jury process is not to be lightly granted because it would involve a breach of grand jury secrecy and the delay and disruption of the orderly functioning of the criminal justice system; one is not entitled to a hearing to enable him to satisfy his unsupported suspicions. United States v. Dixon, 538 F.2d 812 (9th Cir. 1976). This same reasoning applies to the breach of grand jury secrecy that results from disclosure of grand jury records absent a showing of some "particularized need."

**B.    GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY SHOULD BE GRANTED**

The Government hereby requests reciprocal discovery from defendant pursuant to Federal Rules of Criminal Procedure 16(b) and 26.2.

## IV

## CONCLUSION

For the foregoing reasons, the Government requests that defendant's motions be denied where indicated and the Government's request for reciprocal discovery be granted.

DATED: June 2, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/S/

FAITH A. DEVINE
Assistant U.S. Attorney

15

# EXHIBIT C

16



# THE JACQUOT LAW FIRM

**David Jacquot, JD, LLM (Tax)**
Licensed to Practice in California, Idaho and Washington

Formerly at
401 West A Street, Suite 2210
San Diego, CA 92101

IN TRANSIT TO NEW LOCATION!

E-mail: Taxattorney619@yahoo.com

---

May 26, 2004

ADDRESS

Dear XÉLAN DOCTORS:

As you may be aware I felt it necessary to resign as xélan general counsel several weeks ago due to issues surrounding management and Mr. Les Buck. For you, the doctors, I was pleased to think that at least the Law Offices of MICHAEL R. SUVERKRUBBE was still there fighting for the doctors! On May 20, 2004, Dr. Guess fired the Law Firm due to ethical differences.

It was extremely unfortunate when xélan (Dr. Guess) and Les Buck decided to terminate the Law firm and its staff and I have contacted Michael and on my own initiative write to you.

I am writing this to inform you that you should accept Mr. Suverkrubbe's invitation to continue your fight and retain him. Michael stated that xélan has retained Mr. Durney to step into his position but there are transition and knowledge issues that can not be overlooked. You all should realize that I have the utmost respect and confidence in Michael's ability, his integrity and his documented successes, and you should retain Michael and his Law Firm as soon as possible.

I have known Mr. Suverkrubbe for over four (4) years and have found his character and work ethic beyond reproach. During this time, I have become amazed at his insight, knowledge of xélan products and technical expertise when dealing with the IRS and you, the xélan doctors. In every instance, I have found Mr. Suverkrubbe to be the consummate professional and an excellent attorney and advocate.

The resume of Mr. Durney appears to indicate he is a knowledgeable tax attorney. But, Mr. Suverkrubbe has been working this case for three years and when locked out of his office had almost 2000 audits. The financial restraints placed upon him by xélan, Les Buck and Doctors Insurance Company were the main reason for the lack of adequate staffing to return calls in a timely manner. Michael now is positioned not to have Les Buck or Dr. Guess dictate his efforts because they no longer control the ability to manage his resources.

### MEMBERS OF XÉLAN PLEASE TAKE THIS TO HEART

It is with my strongest support and unwavering recommendation that Mr. Suverkrubbe be engaged to continue your battle. He is currently working to achieve a tremendous benefit/settlement for the doctors and without Michael xélan will find it difficult to resolve these issues.

I look forward to hearing your comments about this letter and my recommendation of Michael in his fight for you at the IRS. Please email me if you have any questions taxattorney619@yahoo.com

Sincerely,

DAVID JACQUOT, JD, LLM (Tax), PA

Enclosure

*"Specializing in old fashioned hard work and personalized service for all your tax, estate, financial, and business legal needs."*

0174-00002

17