David Jacquot
2041 Bandy Road
Priest River, ID 83856
(208) 415-0777
FAX: (208) 263-6274

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case #  08CR1171-W |
|---|---|---|
|  | ) |  |
| Plaintiff | ) | REPLY to GOVERNMENT |
|  | ) | OPPOSITION |
| v. | ) |  |
|  | ) | Judge: Hon. Thomas J. Whelan |
| DAVID C. JACQUOT, | ) | Courtroom: 7 |
|  | ) | Date: Sept 8, 2008 |
| Defendant | ) | Time: 2:00 pm |

1
2   1. When reviewing the government's Opposition to the Defendant's Motions, it is important to
3      read what they stated, but equally as important to consider what they did not say. The
4      majority of this Reply will address the errors of facts and law found in the government's
5      Opposition. More importantly, the Reply will show continued bad faith actions by AUSA
6      Devine, including, **submission of yet another false declaration to this Court**. However, first
7      the Defendant will discuss what the Government did not state in their Opposition.
8
9   2. AUSA Devine does not address the allegations of misconduct by herself and government
10     agents at all. Rather, she attempts to sweep all the illegal and bad faith actions of the past,
11     including the presentation of false and erroneous declarations to this Court, under the rug
12     with the statement, "The Government will not debate the propriety of the parallel civil
13     litigation or rebut the details of wins and losses." (Page 2 Line 4). She simply takes an
14     arrogant stance that she is not required to discuss these important issues, essentially saying
15     that the government can do as it wishes and is not required to justify their illegal actions. In
16     general, these bad faith actions include:
17

- The fact that the Declarations provided to this Court were erroneous and false,
- The search affidavits were likely the same as the false declarations in the civil case,
- The government obtained and used the evidence illegally seized and derivative evidence from the same, and
- The government illegally obtained attorney-client privileged information and used it.

Moreover, AUSA Devine did not discuss specific items of discovery and disclosure she has refused to provide to the Defendant. She simply ignored the issues related to:

- Items seized that belong to the Defendant are not being returned or disclosed in discovery.
- The Defendant's statements to government agents are not being provided.
- Disclosing the existence of witnesses or informants that conflicted out the Public Defender.
- Disclosing scientific tests and expert witnesses.
- Disclosing impeachment evidence of government witnesses.
- Disclosing witness statements favorable to the Defendant.
- Disclosing evidence seized beyond the scope of the warrant.
- Disclosing information provided to CID agents by Michael Suverkrubbe.
- Why the unusual review of the DJPA tax returns only occurred after a string of humiliating defeats.

These issues are important issues with Constitutional Rights implications and even if the government wants to ignore them, the Defendant urges the Court not to. In fact, since the government did not respond to these issues, the Defendant requests that the Court decide all inferences in favor of the Defendant, and grant the relief requested in the Motion, including:

- Dismissing the Indictment, or at a minimum,
- Suppressing the following evidence:

    o The Government be limited to documentary evidence in its case in chief that it had disclosed to the Defendant prior to the filing of the Motion.

    o The Court allow **no** evidence from records seized during the search to be admitted at trial and allow no testimony related to such excluded records to be admitted at trial. This blanket exclusion is appropriate based on Federal Rule of Evidence 106, "Remainder of or Related Writings or Recorded Statements" which provides: *"When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that*

> *time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."*

- The Court admit **no** oral or written statements of the Defendant or any records that contain statements of the Defendant be admissible at trial and **no** testimony: (1) related to such statements,(2) by agents that collected such statements, and (3) related to records that contain such statements, be admissible at trial.

- The Court find that **no** results of scientific tests be admissible at trial and that no testimony related to such tests be admissible at trial.

- The Court find that **no** expert testimony is admissible at trial.

- The Court to allow **no** testimony by any witness that has a prior conviction to be admitted at trial.

- The Court to allow **no** testimony by any witness for whom the government possesses impeachment material to be admitted at trial.

- The Court allow **no** evidence or testimony regarding evidence 1) obtained or 2) derived from evidence that was seized by warrant.

- The Court allow **no** evidence or testimony regarding evidence 1) obtained or 2) derived from information that was provided to the government by Mr. Suverkrubbe.

3. In regards to the government's actual statements in the Opposition and Exhibits, the Defendant alleges that there are factual misstatements and erroneous legal arguments. These issues will be addressed in that order.

4. **Factual Misstatements.**

    4.1. Payment of $100 million in taxes. AUSA Devine tries to claim that payment of $100 million in taxes by individual taxpayers was somehow a victory for the government and a redemption for all the bad faith activities of the government. These taxes may have been paid by individual taxpayers, but this was not as a result of any government victory. These taxes were payable on distributions from the xelan plans or on plan termination as **the plans were originally designed.** (Many of these plans were like IRAs, the participants

of these plans took deductions when contributions were made and reported taxable income when they received distributions). Therefore, these taxes would have been paid when the plans terminated on their own and when distributions were made to participants. Because the government's bad faith actions put xelan out of business, the plans terminated early and it is erroneous for the government to claim a "victory" for the payment of these taxes. Mere passage of time would have resulted in these tax payments anyway. What is important in these cases is that the government's allegations of tax fraud were **not** supported. In fact, no court ever determined that the xelan programs violated the Internal Revenue Code. There were no fraud penalties assessed against the participants of the xelan plans. Further, **the hundreds of millions of dollars in deductions taken by the participants of those plans were not even disallowed by the IRS.**

4.2. <u>Government Exhibit A – Settlement Email</u>. AUSA Devine cannot truthfully tell this Court that this email that was not related to settlement discussions. Plea negotiations with the government have been ongoing for several years. The Defendant sent a letter (attached as Exhibit 5 to the Statement of Facts) to the government offering settlement of the case to avoid the costs of trial. The government responded that they were not interested in the settlement proposed. They did not say that they were **not interested in any pre-trial settlement**, and in fact had made multiple settlement offers to Defendant's previous counsel that were unacceptable to the Defendant. The Defendant responded to their denial and such response was a continuation of settlement negotiations and therefore not admissible under FRE 410. **More importantly, even if the statement of the Defendant is admissible under FRE 410, it does not support the argument that the search warrant affidavits are correct as the government argues.** The Defendant stated that he knows information about the tax liabilities of "Les Buck, Tom Roberts, and others" and **not about the alleged tax fraud of xelan, which was the target of the government's investigation.** The Defendant alleges he has information about certain **individuals'** tax liability and such information would **not** give the government probable cause to seek a search warrant for the xelan offices where none of those individuals are located. Further, AUSA Devine's assertion that the Defendant's statement is "merely" provided to show that the Defendant's arguments to this Court lack credibility, (<u>Page 2 Footnote 1</u>) is in fact, "merely" another bad faith act by AUSA Devine intended to improperly damage the Defendant.

4.3. AUSA Devine is being untruthful again when she states that "the government did not refuse to provide discovery." (<u>Page 6 Line 14</u>) Discovery was requested multiple times, and a "simple chart" was provided to allow AUSA Devine to indicate what existed, and what she was, and was not, going to provide. She refused to reply and **more importantly, did not provide what was requested, insisting the government had already provided**

1     **everything it is required to.** This is clearly refusal by the government to provide
2     discovery.

4 4.4. In regards to the government's Proffer of Evidence to Introduced at Trial, it only
5     "illustrate[s] the simplicity of the case" (Page 4 Line 19) that the government wishes
6     were true, but in reality, the government's proffer only tells part of the story and the case
7     is not as simple as AUSA Devine represents to this Court. As stated in the Defendant's
8     Statement of Facts, Paragraph 25, in or around 2006 when the government decided to
9     attack the DJPA returns, the government alleged errors in 2001 to 2003, and no return
10    filed for 2004. Later they "found" the 2004 return and the numbers the government
11    presented to Defendant's counsel from the xelan accounting records for 2001 to 2003
12    changed multiple times. Ultimately the numbers provided by the government are:

| Year | Government's Calculation of Payments Net of Expenses | Amount Shown on Return |
| --- | --- | --- |
| 2001 | $469,139 | $344,250 |
| 2002 | $876,205 | $744,578 |
| 2003 | $744,758 | $897,340 |
| 2004 | $116,878 | $418,975 |
| **Total** | **$2,206,980** | **$2,405,143** |

14    As this table shows, for the entire period in question, DJPA declared almost $200,000
15    more income than what the government alleges were the payments net of expenses and
16    therefore, overall there is **no** tax loss. The fact that the government's numbers changed
17    several times shows that there are serious errors or complexities in the xelan accounting
18    records (which have been seized and are being held by the government.) It is worth
19    noting here that AUSA Devine stated in her Opposition to this Motion that an attack on
20    those xelan accounting records would be "frivolous". (Page 5 Line 1) The government's
21    difficulty in using those records to settle on its numbers demonstrate that the Court will
22    need to carefully examine the reliability of those records before allowing the
23    government to introduce them at trial. The government's simplistic approach also does
24    not take into account the inherent discrepancies between accrual basis payors and cash
25    basis payees (xelan, Inc. was an accrual basis taxpayer, whereas DJPA was a cash basis
26    taxpayer), or other matters that could explain the timing differences. With the loss of
27    the DJPA records as described in the Statement of Facts, Paragraph 24, the Defendant
28    does not want to mislead the Court and state that all discrepancies can be easily
29    reconciled. However, if the government had provided full access to the xelan

accounting records, the same records they used to calculate the numbers above, the Defendant could have sought to hire a forensic accountant to try and reconstruct and reconcile the numbers. Moreover, these numbers show that the Government's portrayal in their proffer was not as simple, nor as correct as they would like the Court to believe.

AUSA Devine has argued, and will likely argue to this Court, that the numbers for 2003 and 2004 were artificially inflated to make up for the shortfalls in 2001 and 2002. There are serious problems with her assertion:

- The Defendant was not aware of the review of the DJPA returns and the allegations of of problems with the 2001 and 2002 returns until around 2006, which was well after the 2003 and 2004 returns were filed.

- The Defendant's name was on the xelan Foundation Donor List stolen by IRS Agent John Wong and which was the basis for audits occurring all over the U.S. as described in the Statement of Facts, Paragraph 5. Because the Defendant, as counsel for xelan, was aware the IRS was using the Donor List to initiate audits of the donors to the Foundation, coupled with the fact that the Defendant's zealous representation of his clients was angering the IRS, the Defendant fully expected to be audited when the 2001 to 2004 returns were filed.

- Even though the government's position for 2003 and 2004 indicate a substantial overstatement of income, for which a refund could be sought, the Defendant and DJPA did not seek such refund as the Defendant does not believe that the Defendant's numbers were incorrect.

4.5. The facts alleged in the Statement of Facts and Proffer of Evidence to be Introduced at Trial are unsupported by any Declaration and should be struck and not considered in the decision of the Defendant's Motion.

5. **Erroneous Legal Arguments.**

5.1. Production of Documents.

5.1.1. The government admits that they are using evidence obtained from forensic images of xelan computers obtained pursuant to a warrant conducted on 4 November 2004 (Page 5 Line 18). They intend to use IRS-CI agent Roger Lange to introduce these records. As argued in the Defendant's Points and Authorities at paragraph 2.1.3 and 3.1, these records are material and potentially exculpatory and

should have been disclosed. **If the use of these records is important to proving the government's case, they are also necessary to establishing a defense.**

5.1.2. The government states that it "will introduce contracts that DJPA and Defendant had with xelan" however all of these have not been produced. Further the government reserves the right to call a live witness to prove the same, and this witness has not been identified.

5.1.3. AUSA Devine falsely argues to this Court that the Defendant has essentially requested the "government to produce everything in its files related to the investigation of xelan Inc. and its related entities." (Page 7 Line 2) The Defendant did not make such a request. The items sought are clearly described in the Defendant's Motion and Points and Authorities and the Defendant has **not** requested all records or "open file" discovery.

5.1.4. The argument put forth by AUSA Devine for the reason the Defendant has been denied access to these records is absolutely laughable. AUSA Devine argues that she has provided the Defendant access to the computer records and documents seized on 4 Nov 2004 because she had offered the Defendant's prior counsel an opportunity to inspect them (Page 6 Line 21-24). If this offer was really made, it was likely made after the search 3 to 4 years ago when no indictment was pending. Essentially AUSA Devine is arguing that the Defendant's prior counsel **waived discovery** for the Defendant years before the issues at hand were ever raised, and years before the indictment was sought. This is simply ludicrous. AUSA Devine clearly knows that she should have made these records available and is grasping at straws to come up with a reason why she did not provide them. Further, it misleads this Court to state that an offer to inspect those records was made **but not inform the Court that the offer was made pre-Indictment.**

5.2. <u>Compel Discovery to Support Selective Prosecution Claims</u>.

5.2.1. AUSA Devine erroneously argues to this Court that the "Defendant asks the Court to compel discovery pursuant to Rule 16 so he can establish that his prosecution is tainted by unconstitutional conduct." Page 7 Line 9. This is untrue. The Defendant clearly separated his arguments in the Points and Authorities with paragraph 2 relating to Rule 16 violations and paragraph 3 relating to <u>Brady</u> violations. The major items sought relating to bad faith prosecutorial actions are the search affidavits and communications with Mr. Suverkrubbe. These items are addressed in paragraph 3 of the Points and Authorities as <u>Brady</u> violations. Therefore, the

Amstrong and Chon cases cited by the government on pages 7 and 8 of the government Opposition are simply inapplicable, as the Defendant has **not** requested that discovery be compelled pursuant to Rule 16 to support a claim of selective prosecution. Rather the Defendant has requested that Discovery be compelled pursuant to Rule 16 because the law requires it, and the Defendant needs it for trial preparation. The Defendant has requested that information be provided to support allegations of misconduct, but **not** pursuant to Rule 16.

5.2.2. In regards to information requested pursuant to Brady that is exculpatory and should be disclosed, the government **concedes** that "some of the types of information sought by Defendant may or may not meet the Brady/Bagley materiality standard," (Page 10 Line 10 & 11) and then argues that the government should be the one to make the decision whether that standard is met. The Defendant challenges whether this is proper even in a good faith prosecution, but here, where the Defendant has produced evidence to support a colorable claim of bad faith actions by the prosecution, the fox should not be allowed to guard the hen house. Such a situation guts the protections provided to the Defendant under the Constitution and Brady line of cases and improperly shifts the power from the Judiciary to the Executive branch in violation of the checks and balances established in the Constitution. The information requested pursuant to Brady by the Defendant meets the Bagley standard of "reasonable probability ... to undermine confidence in the outcome." This includes:

- False search affidavits
- Attorney Client Privileged Information provided by Mr. Suverkrubbe
- Impeachment evidence of government witnesses and informants

5.3. Grand Jury Transcripts. The government's cases supporting their argument that the grand jury transcripts should remain secret are inapplicable. The Defendant's request for a Grand Jury transcript is not a "fishing expedition." The face of the Indictment shows that improper material was presented to the Grand Jury. This is **not** a situation where there is a claim that the prosecutor's presentation was "incomplete" or "misleading" Williams 504 U.S. at 54 or is "not supported by adequate evidence." Jenson 93F.3d at 669. This is a case where prosecutorial misconduct appears to have injected extraneous matters before the Grand Jury to discredit the Defendant. There is a record of AUSA Devine presenting false and inflammatory evidence regarding xelan and those associated with it in judicial proceedings. Coupled with this is the erroneous paragraph in the Indictment stating that at all times material to the indictment, the Defendant was a Vice-President of xelan. The presentation of evidence for the purpose of damaging the

credibility of the Defendant is a basis to dismiss the indictment as discussed in the Points and Authorities at paragraph 4. The Defendant argues that he has met the burden sufficient to examine the transcripts as described in paragraph 4 of the Points and Authorities. To limit the potential damage to the "secrecy" of the grand jury, the Defendant is willing to have the grand juror names redacted from the transcript and consent to a protective order that the transcripts cannot be shown to anyone other than the Defendant and his counsel.

5.4. Fourth Amendment.

5.4.1. Without production of the search affidavits for review, the Government "contends that the initial probable cause determinations …were correct." (Page 2 Line 10). As discussed in paragraphs 3.5 of the Points and Authorities, these warrants were most likely obtained with false affidavits. The government argues that the Defendant has no standing to challenge the search because he has no expectation of privacy. The Defendant had clear expectations of privacy in the records held by Mr. Harrington. Additionally, the Defendant had clear expectations of privacy in the law firm records that were held in the joint computer files maintained by xelan. Lastly, Viatical Liquidity, a company owned and managed by the Defendant, maintained offices and paper and computer records at that location after the Defendant terminated legal representation. Contrary to Agent Brana's contention that Mr. Harrington did not object to the search, Mr. Harrington has submitted a declaration that he did object to the search. See **Exhibit 1**.

5.4.2. Exhibit C produced by the government is a forgery. It was produced by Michael Suverkrubbe. Mr. Suverkrubbe (and/or his accomplices) cut and pasted portions of the Defendant's letterhead, the footer and signature into a document. At no time did the Defendant ever produce any correspondence that indicated in his letterhead that he was "formerly at" 401 West A Street, Suite 2210, San Diego, CA 92101 or that he was "IN TRANSIT TO A NEW LOCATION!" Additionally, there are other errors inconsistent with the Defendant's correspondence style. Mr. Suverkrubbe wrote this letter in an apparent attempt to keep clients from engaging attorney Michael Durney instead of him for defense against the IRS audits. Attached as **Exhibit 1** hereto is the declaration of attorney Silas Harrington that he heard Michael Suverkrubbe admit he forged this letter. Additionally, there should be email records in the information that the government seized and is holding that would show that this document is false.

5.4.3. The government does not describe the source of this letter it produced as Exhibit C, but it **likely came from the illegal search itself or from Mr. Suverkrubbe.** Regardless of where this letter was obtained, it is another clear example of bad faith activity by AUSA Devine and the government:

- If AUSA Devine believed that this letter was written by the Defendant, it should have been provided in discovery pursuant to Rule 16 as both property of the Defendant and a written statement of the Defendant, or

- If AUSA Devine knew or suspected that the letter is a forgery, she should have provided it as Brady material (and not used it in her Opposition). If she had obtained the document from Mr. Suverkrubbe, it should have been provided as Brady material as Mr. Suverkrubbe is known to be an unreliable source.

Either way, the government had a duty to disclose this letter. AUSA Devine was obviously aware of the existence of this letter and her failure to provide it was clearly intentional. Not only does she intentionally not disclose it, she then submits it to this Court in support of her Opposition. This letter is yet another example of how the government has acted in bad faith in its vindictive effort to destroy the Defendant.

5.5. Violation of the Attorney Client Privilege.

5.5.1. The Defendant alleges that the government initiated the investigation of xelan and the Defendant based on information provided to the government in violation of the attorney client privilege during the time Defendant represented the xelan companies. This was likely in the 2002 to 2003 time frame. The Defendant is asserting the privilege on behalf of his clients. The government's opposition was received on Friday afternoon of Labor Day weekend and time prevented obtaining declarations prior to filing this Reply. If an evidentiary hearing is set, the Defendant can produce client witnesses to assert the privilege. This violation of the attorney-client privilege sparked an investigation that lead to the false declarations filed in this Court, similar false search affidavits, and ultimately a retaliatory investigation of the Defendant with subpoenas and document requests based on this foundation of falsehood.

5.5.2. The Defendant also alleges that there may have been attorney client privileges violated during the search in 4 Nov 2004, as privileged information was taken from

        Mr. Harrington and from the premises and never returned to the Defendant. In regards to this issue, **AUSA Devine and the agents in this case are being dishonest with the Court, yet again.**

    5.5.2.1.    AUSA Devine has produced a declaration of IRS-CI Agent Brana stating that "We did not search…any offices known to us to be attorney's offices or any areas known to contain attorney client records." (Agent Brana Dec. Page 1, Line 27) **This statement is false and AUSA Devine and Agent Brana know it to be false.** The search inventory shows that the computer in the office used by attorney Silas Harrington was imaged, as was Mr. Harrington's personal laptop. AUSA Devine sent out the search inventory under her cover letter that is attached as Exhibit 1 to the Defendant's Statement of Facts. Attached as <u>Exhibit 2</u> to this Reply are pages from that search inventory that show attorney offices being searched. Additionally attached as <u>Exhibit 1</u> is a Declaration form attorney Silas Harrington refuting Agent Brana's declaration that no attorney offices were searched.

    5.5.2.2.    Additionally, AUSA Devine is **caught in another lie** when she states that "all potentially privileged items have been segregated and not reviewed by members of the prosecution team" (Page 16 Line 1). This statement cannot be reconciled with her statement that Agent Weeks, the agent investigating the Defendant, "allowed all of the parties involved in the investigation of xelan access to the original records" and the statement that Agent Weeks had a "computer hard drive containing imaged copies of <u>every document seized</u> from Xelan's offices…"(Page 6 Lines 23-26) Additionally, in Agent Brana's declaration, she stated that Agent Weeks included the contents of privileged materials in the inventory and that he allowed attorney Michael Lipman to review these materials. **Clearly agent Weeks was a member of the "prosecution team" and he clearly had access to and reviewed all the information seized.** AUSA Devine's conflicting statements in her Opposition again shows the bad faith that has permeated this entire matter.

## 6. <u>Conclusion</u>

Where there is stink, there is rot. The best way to disinfect rot is sunshine. Why does the government want so desperately to avoid letting the light of day shine on their actions in this case? Because they have rot to hide! The government wants this Court to allow then to sweep all their bad actions under the rug, and let them go on their merry way. As shown by the false information provided to this Court in this very matter, AUSA Devine and the government have

1  no problem acting in bad faith to get even with the Defendant for his exercise of zealous
2  representation of his clients. In a matter where she has been accused of prosecutorial misconduct
3  for using false information, she submits more false information! In a matter where she is
4  accused of withholding discoverable information, she submits documents in support of her case
5  that she had previously failed to disclose. When will this stop? The answer is never, unless the
6  Court forces it to stop.

7  The Courts are the final line of defense against governmental abuse of citizens, and the
8  Defendant urges this Court to stop this outrage now, dismiss this case with prejudice and send a
9  strong message to the government that this kind of behavior is not going to be tolerated, not now,
10 and not ever.

Respectfully Submitted this 2nd day of September 2008.

/s/ David Jacquot
**David Jacquot**

**Exhibit 1**

**Declaration of Silas Harrington**

David Jacquot
2041 Bandy Road
Priest River, ID 83856
(208) 415-0777
FAX: (208) 263-6274

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case # 08CR1171-W |
|---|---|---|
| Plaintiff | ) ) ) | Declaration to Defendant's Reply |
| v. | ) ) | Judge: Hon. Thomas J. Whelan |
| DAVID C. JACQUOT, | ) ) ) ) | Courtroom: 7<br>Date: Sept 8, 2008<br>Time: 2:00 pm |
| Defendant | ) | |

1  I, Silas Harrington, declare as follows:

2  1. I am older than 18 years old and make this Declaration voluntarily. I am an
3     attorney licensed in the state of California. If called as a witness, I could testify
4     under oath to the matters described herein based on my personal knowledge.

5  2. Agent Brana states in her declaration "There were several attorneys present during
6     the search. Among those present were ... Silas Harrington. Neither Mr. Lipman
7     nor Mr. Harrington made any objection to how the search was being conducted."

8  3. Agent Brana's statement regarding my conduct is false. I objected strenuously to
9     the search of my laptop, which was not on the premises, but in my personal
10    possession when I entered 401 West A Street, Ste. 2210 some 10 to 15 minutes
11    after the warrant had been executed.

PAGE 1          DECLARATION OF SILAS HARRINGTON          08CR1171-W

1   4. The agents were aware that the laptop was not in the office at the time the warrant
2      was executed and mapped the computer over my continuous objections and after I
3      notified them of my status as an attorney.

4   5. I also showed the agents the office I was using in the suite, and aggressively
5      voiced my concern regarding the search of this space, but the materials in my
6      office were taken without any apparent regard to their potentially privileged status.

7   6. Ms. Brana's statement that Mr. Suverkrubbe maintained an office at 401 West A,
8      Ste. 2210 is also false. Mr. Suverkrubbe's office was in an adjacent suite, not
9      referenced in the warrant and not accessible from 401 West A, Ste. 2210.

10  7. I am aware of the letter attached to the government's opposition as Exhibit C. Mr.
11     Suverkrubbe forged this letter. I was present when Mr. Suverkrubbe was
12     confronted regarding the forgery and witnessed him admit that he had created this
13     letter without approval from Mr. Jacquot.

14  Executed on 2 day of September 2008 at San Diego, CA. I declare under penalties of
15  perjury under the laws of the United States that the foregoing is true and correct.

16
17  *[signature]*
18  Silas Harrington

**Exhibit 2**

**Extract: Search Inventory**

CJF
WORKING COPY

# Inventory Listing of All Items Seized at Search Warrant Site

**Site Name:**
xelan
401 W. A Street, Suite 2210
San Diego, CA 92101
xelan

**Investigation Number:**
330330135

**Starting Date and Time:**
11/04/2004 07:55 AM

**Ending Date and Time:**
11/04/2004 06:45 PM

**Report Date:**
Friday, January 14, 2005

| | | | |
|---|---|---|---|
| **Control #:** | A1 | **Evidence Box:** | 1 |
| **Location:** | Trish Delator Office | **Locator Code:** | D |
| **Found:** | Floor | | |
| **Description:** | Seized Per Warrant | Xelan/Greenbook Training Manuals 11-4-04 | |
| | | Guess Insurance Policy - other records, 2004 | |
| | | Greenbook Business Tracking - Client Files, 2004 | |

| | | | |
|---|---|---|---|
| **Control #:** | A2 | **Evidence Box:** | 2 |
| **Location:** | Trish Delator Office | **Locator Code:** | D |
| **Found:** | On Floor in this container | | |
| **Description:** | Seized Per Warrant | Client Policies & Contribution Statements | |

| | | | |
|---|---|---|---|
| **Control #:** | A3 | **Evidence Box:** | 4 |
| **Location:** | Matt Anderson Office | **Locator Code:** | K-1 |
| **Found:** | Desk | | |
| **Description:** | Seized Per Warrant | 419 Smart Reports/Misc. Account information | |
| | | Xelan Advertisements | |
| | | Unlabeled CD | |
| | | Pension Service Document | |
| | | Xelan Contact List | |
| | | Recommendations for Xelan | |

Page 1 of 69

| Control #: | A78 | Evidence Box: | 230 |
|---|---|---|---|
| Location: | Office with Server | Locator Code: | N-24 |
| Found: | Desk | | |
| Description: | Seized Per Warrant | Image of Computer Named Exchange 2K | |

| Control #: | A79 | Evidence Box: | 230 |
|---|---|---|---|
| Location: | Office with Server | Locator Code: | N-24 |
| Found: | Desk - workstation | | |
| Description: | Seized Per Warrant | Image of Computer named Xelan 1 | |

| Control #: | A80 | Evidence Box: | 230 |
|---|---|---|---|
| Location: | Office with Server | Locator Code: | N-24 |
| Found: | Desk | | |
| Description: | Seized Per Warrant | Image of HDS from Compaq Proliant Server named "Accounting" | |

| Control #: | A81 | Evidence Box: | 230 |
|---|---|---|---|
| Location: | Reception | Locator Code: | Y |
| Found: | Lobby | | |
| Description: | Seized Per Warrant | Silas Harrington's Fujitsu Laptop Image of Computer Hard Drive. Computer was handed to Roger by S. Harrington | |

| Control #: | A82 | Evidence Box: | 230 |
|---|---|---|---|
| Location: | Office with Server | Locator Code: | N |
| Found: | N | | |
| Description: | Seized Per Warrant | Image of BES Server found in Room N. Imaged on 11/08/2004 | |

| Control #: | A83 | Evidence Box: | 230 |
|---|---|---|---|
| Location: | Office with Server | Locator Code: | N |
| Found: | N | | |
| Description: | Seized Per Warrant | Image of Server named XelanWall located in Room N. Imaged on 11/05/2004 | |

| Control #: | A84 | Evidence Box: | 230 |
|---|---|---|---|
| Location: | Office B | Locator Code: | B-11 |
| Found: | Desk | | |
| Description: | Seized Per Warrant | Image of computer found in Room B on Desk 11. Imaged on 11/05/2004 | |

| Control #: | A85 | Evidence Box: | 230 |
|---|---|---|---|
| Location: | Office B | Locator Code: | B-14 |
| Found: | Desk | | |
| Description: | Seized Per Warrant | Image of computer found in Room B on Desk 14. Imaged on 11/05/2004. | |

| Control #: | A102 | | Evidence Box: | 230 |
|---|---|---|---|---|
| Location: | Multi Desk Office | | Locator Code: | W-40 |
| Found: | Desk | | | |
| Description: | Seized Per Warrant | Image of computer found in Room W on Desk 40. Imaged on 11/08/2004. | | |

| Control #: | A103 | | Evidence Box: | 230 |
|---|---|---|---|---|
| Location: | Office with Server | | Locator Code: | N-14 |
| Found: | Desk | | | |
| Description: | Seized Per Warrant | Image of computer found in Room N on Desk 14. Imaged on 11/08/2004. | | |

| Control #: | A104 | | Evidence Box: | 230 |
|---|---|---|---|---|
| Location: | Office G | | Locator Code: | G |
| Found: | G | | | |
| Description: | Seized Per Warrant | Image of computer (C1) found in Room G (Silas' Office). Imaged on 11/05/2004. | | |

*[A104 entry circled by hand with arrow notation "K"]*

| Control #: | A105 | | Evidence Box: | 230 |
|---|---|---|---|---|
| Location: | Matt Anderson Office | | Locator Code: | K |
| Found: | K | | | |
| Description: | Seized Per Warrant | Image of computer (C1) found in Room K (Anderson's Office). Imaged on 11/05/2004. | | |

| Control #: | A106 | | Evidence Box: | 230 |
|---|---|---|---|---|
| Location: | Desks by CopyStorage | | Locator Code: | F-4 |
| Found: | Desk | | | |
| Description: | Seized Per Warrant | Image of computer found in Room F on Desk 4 (Tachiquin's desk). Imaged on 11/05/2004. | | |

| Control #: | A107 | | Evidence Box: | 230 |
|---|---|---|---|---|
| Location: | Desks by CopyStorage | | Locator Code: | F-2 |
| Found: | Desk | | | |
| Description: | Seized Per Warrant | Image of computer found in Room F on Desk 2 (Brockland's desk). Imaged on 11/05/2004. | | |

| Control #: | A108 | | Evidence Box: | 230 |
|---|---|---|---|---|
| Location: | Multi Desk Office | | Locator Code: | W-30 |
| Found: | Desk | | | |
| Description: | Seized Per Warrant | Image of Computer found in Room W on Desk 30 (Salvacion's desk). Imaged on 11/08/2004. | | |